# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA and COMMERCE AND INDUSTRY INSURANCE COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>BETA CONSTRUCTION LLC f/k/a BETA DRYWALL LLC; FINEST DRYWALL, INC.; and ROBERT C. PATE, as Trustee for the WCI Chinese Drywall Trust;<br><br>Defendants. | Case No. |

## COMPLAINT FOR DECLARATORY JUDGMENT

### I. INTRODUCTION

1. Plaintiffs National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and Commerce and Industry Insurance Company ("CIIC") seek a declaration under 28 U.S.C. §§ 2201-2202 that they owe no duty to defend or indemnify Beta Construction LLC f/k/a Beta Drywall LLC, Finest Drywall, Inc., and/or Robert C. Pate, as Trustee for the WCI Chinese Drywall Trust (collectively referred to herein as "Defendants") under National Union policies issued to Beta Construction LLC f/k/a Beta Drywall LLC ("Beta") and a National Union policy and a CIIC policy issued to Finest Drywall, Inc. ("Finest"), with respect to claims related to allegedly defective drywall installed by Beta and Finest in homes built in Florida by homebuilder WCI Communities, Inc. ("WCI"), which is now bankrupt.

2. Defendant Pate is the Trustee for the WCI Chinese Drywall Trust, which was created in the Delaware Bankruptcy Court to assume WCI's liability for claims arising out of allegedly defective Chinese Drywall installed in homes built by WCI and to obtain insurance proceeds to settle those claims. Pate filed an action in the Federal District Court for the Eastern District of Louisiana captioned *Pate v. Am. Int'l Specialty Lines Ins. Co. et al.*, 2:09-cv-07791, which named National Union as a defendant and which National Union moved to dismiss. Pate subsequently filed a first amended complaint, which is the operative complaint. National Union also moved to dismiss the first amended complaint.

3. This Court, and not the Louisiana court, is the proper venue for resolution of this dispute because there are no connections between Louisiana and the interested parties or alleged injuries – WCI did not do business in Louisiana, Beta and Finest do not do business in Louisiana, National Union and CIIC did not issue the policies in dispute in Louisiana, and the underlying claimants do not allege injuries in Louisiana – and all of the potentially implicated policies were issued in Florida and the facts giving rise to the claims took place in Florida.

4. There is an actual, present and bona fide controversy between the parties with respect to National Union and CIIC's coverage obligations to defend and indemnify Defendants in claims involving allegedly defective drywall.

## II.   THE PARTIES

5. National Union is an insurance company organized and existing under the laws of the State of Pennsylvania, with its principal place of business in New York.

6. CIIC is an insurance company organized and existing under the laws of the State of New York, with its principal place of business in the State of New York.

7. In 2006, Beta Drywall LLC, amended its articles of incorporation with the Florida Secretary of State to formally change its name to Beta Construction LLC. Defendant Beta Construction LLC f/k/a Beta Drywall LLC ("Beta") is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business in Florida. Beta is in the business of purchasing, selling, and/or distributing drywall throughout Florida, including but not limited to Fort Lauderdale, Fort Myers and Bradenton.

8. Defendant Finest Drywall, Inc. ("Finest") is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Florida. Finest is in the business of purchasing, selling, and/or distributing drywall throughout Florida, including but not limited to Fort Lauderdale, Fort Myers and Bradenton.

9. Defendant Robert C. Pate, as Trustee for the WCI Chinese Drywall Trust, ("Pate") is a citizen of the state of Texas and resides in Corpus Christi, Texas. Pate has been named the Trustee of the WCI Chinese Drywall Trust, which was created by order of the United States Bankruptcy Court for the District of Delaware on August 26, 2009. The order confirmed the Second Amended Joint Chapter 11 Plan of Reorganization (the "Plan") filed by WCI Communities, Inc. and a number of its subsidiaries ("WCI"), which had filed for bankruptcy on August 4, 2008 and July 1, 2009. The order created the WCI Chinese Drywall Trust to assume WCI's liability or losses for claims related to Chinese drywall. Pursuant to the order, WCI transferred to the WCI Chinese Drywall Trust all

rights, titles, and interests in the "Insurance Coverage Actions" or "Chinese Drywall Actions" and the proceeds thereof, and all rights, titles, and interests in pursuing and receiving any and all "Insurance Recoveries," as those terms are defined in the Plan. The order also approved the appointment of Robert C. Pate as the Trustee of the WCI Chinese Drywall Trust.

### III. JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 2201 and 1332, as amended. This matter involves a dispute between citizens of different states and the value in controversy exceeds $75,000, exclusive of interest and costs.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a) and (c) because one or more of the Defendants resides and conducts business in this district, and a substantial part of the events giving rise to this claim occurred in this district.

12. National Union and CIIC are entitled to declaratory relief under 28 U.S.C. § 2201-2202.

### IV. GENERAL ALLEGATIONS

#### A. Background

13. Prior to declaring bankruptcy, WCI was a homebuilder who constructed homes in the state of Florida, which are now the subject of claims alleging property damage and bodily injury caused by allegedly defective Chinese-manufactured drywall installed in the claimants' homes in Florida.

14. Beta and Finest purportedly are subcontractors of WCI who installed Chinese-manufactured drywall in claimants' homes built by WCI in Florida.

15. National Union issued policy number BE 6564380, effective February 28, 2006 to February 28, 2007 to Beta Drywall LLC (the "2006 Beta Policy") and policy number BE 6564484, effective February 28, 2007 to February 28, 2008 to Beta Construction LLC (the "2007 Beta Policy"). Both policies were procured through the Roger Bouchard Insurance agency located in Clearwater, Florida and issued to Beta Drywall LLC and Beta Construction LLC at a Florida address. **(Attached hereto as Exhibits A and B, respectively).** The 2006 and 2007 Beta Policies apply in excess of primary limits of $1 million per occurrence and $2 million general aggregate.

16. National Union issued policy number BE 5346464, effective September 15, 2007 to September 15, 2008 to Finest Drywall Inc. (the "2007 Finest Policy"), and CIIC issued policy number BE 012779651, effective September 15, 2008 to September 15, 2009 to Finest Drywall (the "2008 Finest Policy"). Both policies were procured through the Florida Home Builders Insurance agency located in Tallahassee, Florida and issued to Finest at its Florida address. **(Attached hereto as Exhibits C and D, respectively).** The 2007 and 2008 Finest Policies respectively apply in excess of primary limits of $1 million per occurrence and $2 million general aggregate.

17. Pate, as Trustee of the WCI Chinese Drywall Trust, brought an action in the U.S. District Court for the Eastern District of Louisiana captioned *Pate v. Am. Int'l Specialty Lines Ins. Co. et al.*, 2:09-cv-07791, seeking to obtain insurance proceeds under the 2006 and 2007 Beta policies and 2007 Finest policy issued by National Union. Pate asserts that WCI was an additional insured or additional named insured under the policies because Beta and Finest installed defective drywall in the underlying claimants' homes.

18. The Louisiana action was the first notice National Union received of any claims asserted by WCI under the Beta or Finest policies.

19. Pate asserts that as Trustee of the WCI Chinese Drywall Trust he is entitled to coverage, including defense and indemnification, under policy number BE 6564380 issued to Beta, which he misidentifies as effective February 28, 2007 to February 28, 2008, and policy number BE 5346464 issued to Finest, which he misidentifies as effective September 15, 2008 to September 15, 2009.

20. Pate does not identify CIIC as a defendant in the Louisiana action, nor does he reference policy no. BE 012779651 (the 2008 Finest Policy) in his first amended complaint. Pate does reference the effective dates of the 2008 Finest Policy, but he misattributes the effective dates to policy No. BE 5346464, which was issued by National Union to Finest (the 2007 Finest Policy).

21. Upon information and belief, Pate is presently seeking coverage on behalf of the WCI Chinese Drywall Trust including defense and indemnification, under the 2006 and 2007 Beta Policies and the 2007 Finest Policy issued by National Union (the "National Union Policies") with respect to claims related to allegedly defective drywall supplied and/or installed by Beta and Finest, respectively.

22. Pate's assertion of coverage under the policies issued to Beta and Finest implicates the rights and interests of Beta and Finest under the 2006 and 2007 Beta Policies and the 2007 and 2008 Finest Policies.

23. Pate filed the action in the Eastern District of Louisiana despite the fact there are no contacts between the state of Louisiana and the dispute in issue. Pate does not

allege that WCI constructed any homes in Louisiana or that any of the Chinese drywall-related claims brought against WCI arise out of alleged injuries in Louisiana.

24.  Certain of the insurer defendants named in the Louisiana action assert that they do no business in Louisiana and that the Court lacks personal jurisdiction over such defendants.

25.  On these bases, an insurer defendant in the Louisiana action filed a motion to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), which was joined by National Union and most of the other insurer defendants.

26.  Moreover, despite Beta and Finest's interest in the outcome of this dispute and the disposition of any available insurance proceeds under the National Union Policies issued to them as the named insureds, the complaint does not name either Beta or Finest as defendants.

27.  National Union and CIIC issued their respective policies to Beta and/or Finest at locations in Florida through brokers located in Florida for risks associated with Beta and Finest's businesses, which are located and conducted in Florida.

28.  Both Beta and Finest are incorporated in Florida with their principal places of business in Florida.  (Florida Secretary of State Records for Beta and Finest attached hereto as **Exhibits E and F**, respectively.)  There is no indication that either Beta or Finest has ever conducted any business in Louisiana, including performing subcontracting services, marketing themselves to Louisiana businesses and residents, or shipping any products to Louisiana.  The Louisiana Secretary of State's Corporations Database does not contain listings for either Beta or Finest as registered corporations

operating within the state of Louisiana. Additionally, neither Beta nor Finest are listed with the Louisiana State Licensing Board for Contractors.

29. On these bases, it is clear that the Louisiana court does not have personal jurisdiction over Beta and Finest.

30. National Union has filed a motion to dismiss in the Louisiana action for failure to name an indispensable party pursuant to Fed. R. Civ. P. 12(b)(7) on the basis that Beta and Finest are indispensable parties to the dispute whose rights will be prejudiced if the action is allowed to proceed in the Eastern District of Louisiana where the Court lacks personal jurisdiction over Beta and Finest.

31. National Union is aware that Beta has been named in lawsuits or notified of potential claims arising out of Chinese Drywall the company allegedly installed in Florida homes sold by developers other than WCI. These claims (along with any other claims asserted against Beta or Finest) may be asserted under the National Union Policies and CIIC Policy and compete with the WCI claims for insurance proceeds.

### B. The Defective Drywall Claims

32. Pate alleges that, "[i]n 2006, WCI began to receive complaints of property damage and/or bodily injury allegedly arising from Chinese Drywall installed in homes that WCI sold in Florida, including Fort Lauderdale, Fort Myers, and Bradenton."

33. Pate defines "Chinese Drywall" to include "drywall manufactured in China and drywall manufactured domestically that contains recycled drywall from China."

34. WCI has received complaints from over 700 homeowners.

35. Pate contends that the homeowners allege damages that include: "increased rates of corrosion of soft metal materials throughout the houses (such as air conditioning

coils, refrigerator tubing, electrical wires, and television connections); various health issues allegedly arising from the drywall; and tarnishing of silver and soft metal within the homes."

36. According to Pate, the homeowners closed on the Florida homes in issue primarily between September 5, 2006 and September 12, 2008.

37. On information and belief, Beta and Finest have received or will receive claims arising out of their drywall installation operations for WCI and other developers.

### C. Drywall Studies

38. Beginning in or about 2009, various Federal and State agencies, as well as private testing firms, analyzed drywall and reported that certain drywall, including drywall manufactured in China, contains and emits sulfur-related chemical compounds that are associated with corrosion of metal, damage to other property and complaints of odors and adverse health effects.

39. In October 2009, the United States Consumer Product Safety Commission ("CPSC") released several reports concerning testing upon Chinese and domestically-produced drywall. Those reports conclude that the Chinese drywall contained higher concentrations of elemental sulfur compared to the domestic drywall. Further, the Chinese drywall emitted higher levels of total volatile sulfur compounds than did the domestic drywall.

40. On or about November 23, 2009, the CPSC released reports regarding additional drywall testing. The CPSC reported that in a fifty-one home study, hydrogen sulfide gas was detected in homes with defective drywall in concentrations that were

statistically higher than in homes without such drywall. Further, examination of copper wiring in homes containing defective drywall exhibited corrosion.

### D. The Policies

41. Defendants are not entitled to coverage under the 2006 Beta Policy, the 2007 Beta Policy, the 2007 Finest Policy, or the 2008 Finest Policy (collectively "the Subject Policies") with respect to claims arising from allegedly defective drywall unless Defendants first satisfy all conditions for coverage and coverage is not otherwise excluded.

42. There is no coverage until all applicable underlying limits or self-insured retentions are exhausted by payment of loss or claims to which the Subject Policies apply. Payment of defense costs do not erode the underlying limits or self-insured retentions.

43. The Total Pollution Exclusion Endorsement attached to the Subject Policies bars coverage for "bodily injury" and "property damage," if any, associated with defective drywall, arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants," as that term is defined in the Subject Policies.

44. Coverage is barred to the extent that Defendants fail to qualify as insureds under the Subject Policies.

45. Coverage is barred to the extent that a claimant seeks relief from an insured that does not constitute "damages," as that term is used in the Subject Policies. Equitable relief, including medical monitoring, or economic losses associated with defective drywall does not constitute covered damages within the Subject Policies.

46. Coverage is barred for damages that do not constitute "bodily injury" or "property damage," as those terms are defined in the Subject Policies. The mere presence of defective drywall is not "property damage" and there is no coverage under the Subject Policies for any costs arising out of the process of repairing or replacing the drywall.

47. Coverage is barred to the extent any "bodily injury" or "property damage" associated with defective drywall is not the result of an "occurrence," as that term is defined in the Subject Policies.

48. Coverage is barred to the extent that "bodily injury" or "property damage," if any, associated with defective drywall did not occur during the policy periods in issue.

49. "Bodily injury" or "property damage," if any, associated with defective drywall that is continuing or progressive over any length of time may be one "occurrence" taking place only when the "bodily injury," "property damage," or both first commenced.

50. Coverage may be barred to the extent that continuing or progressive "bodily injury" or "property damage" associated with defective drywall, if any, first commenced prior to the inception date of any of the Subject Policies.

51. Coverage is barred for "bodily injury" or "property damage," if any, for which any of the insureds are obligated to pay damages associated with defective drywall by reason of the assumption of liability in a contract or agreement.

52. Coverage is barred for "property damage," if any, to property an insured owns, rents, or occupies, associated with defective drywall.

53. Coverage is barred under each Policy to the extent that the insured expected or intended to cause the "property damage" or "bodily injury," if any, alleged in the Underlying Lawsuits or Pre-Suit Claims.

54. Coverage is barred for "property damage," if any, to an insured's product, associated with defective drywall.

55. Coverage is barred for "property damage," if any, associated with defective drywall to an insured's work that is included in the "products completed operations hazard," as defined in the Subject Policies.

56. Coverage is barred for "property damage," if any, to "impaired property," as defined by the Subject Policies, or to property that has not been physically injured, associated with defective drywall, arising out of a defect in an insured's product or work, or a delay or failure by an insured or anyone acting on an insured's behalf to perform a contract or agreement in accordance with its terms.

57. Coverage is barred for "Property Damage to property being installed, erected or worked upon by the Insured or by any agents or subcontractors of the Insured."

58. Coverage is barred under the 2007 Finest Policy to the extent liability arises out of "construction operations," as that term is defined in the policy.

59. There is no general liability coverage under the 2007 Finest Policy unless such coverage is provided by the applicable underlying insurance.

60. Coverage is barred to the extent Defendants failed to comply with the notice conditions in the Subject Policies.

## COUNT I
## FOR A DECLARATION THAT NATIONAL UNION AND CIIC HAVE NO DUTY TO DEFEND OR INDEMNIFY PATE AS TRUSTEE OF THE WCI CHINESE DRYWALL TRUST

61. National Union and CIIC (the "Insurers") incorporate the allegations set forth within Paragraphs 1 through 60 as if fully set forth herein.

62. A controversy exists between the Insurers and Pate regarding the obligations of the Insurers to defend and indemnify Pate as trustee of the WCI Chinese Drywall Trust under the Subject Policies with respect to claims arising from allegedly defective drywall installed and/or supplied by Beta and/or Finest.

63. The interpretation of the applicable terms of the Subject Policies at issue is governed by Florida law.

64. Coverage is limited or eliminated by the terms of the Subject Policies for the alleged damages for which Pate has or will seek coverage under the Subject Policies.

65. Accordingly, the Insurers have no duty to defend or indemnify Pate in the Underlying Lawsuits or Pre-Suit Claims under the Subject Policies.

## COUNT II
## FOR A DECLARATION THAT NATIONAL UNION
## HAS NO DUTY TO DEFEND OR INDEMNIFY BETA

66. National Union incorporates the allegations set forth within Paragraphs 1 through 60 as if fully set forth herein.

67. A controversy exists between National Union and Beta regarding the obligations of National Union to defend and indemnify Beta under the 2006 and 2007 Beta Policies with respect to claims arising from allegedly defective drywall installed and/or supplied by Beta.

68. The interpretation of the applicable terms of the 2006 and 2007 Beta Policies at issue is governed by Florida law.

69. Coverage is limited or eliminated by the terms of the 2006 and 2007 Beta Policies for the alleged damages for which Beta have or will seek coverage for under the 2006 and 2007 Beta Policies.

70. Accordingly, National Union has no duty to defend or indemnify Beta in the Underlying Lawsuits or Pre-Suit Claims under the 2006 and 2007 Beta Policies.

## COUNT III
## FOR A DECLARATION THAT NATIONAL UNION
## HAS NO DUTY TO DEFEND OR INDEMNIFY FINEST

71. National Union incorporates the allegations set forth within Paragraphs 1 through 60 as if fully set forth herein.

72. A controversy exists between National Union and Finest regarding the obligations of National Union to defend and indemnify Finest under the 2007 Finest Policy with respect to claims arising from allegedly defective drywall installed and/or supplied by Finest.

73. The interpretation of the applicable terms of the 2007 Finest Policy at issue is governed by Florida law.

74. Coverage is limited or eliminated by the terms of the 2007 Finest Policy for the alleged damages for which Finest have or will seek coverage for under the 2007 Finest Policy.

75. Accordingly, National Union has no duty to defend or indemnify Finest in the Underlying Lawsuits or Pre-Suit Claims under the 2007 Finest Policy.

## COUNT IV
## FOR A DECLARATION THAT CIIC
## HAS NO DUTY TO DEFEND OR INDEMNIFY FINEST

76. CIIC incorporates the allegations set forth within Paragraphs 1 through 60 as if fully set forth herein.

77. A controversy exists between CIIC and Finest regarding the obligations of CIIC to defend and indemnify Finest under the 2008 Finest Policy with respect to claims arising from allegedly defective drywall installed and/or supplied by Finest.

78. The interpretation of the applicable terms of the 2008 Finest Policy at issue is governed by Florida law.

79. Coverage is limited or eliminated by the terms of the 2008 Finest Policy for the alleged damages for which Finest have or will seek coverage for under the 2008 Finest Policy.

80. Accordingly, CIIC has no duty to defend or indemnify Finest in the Underlying Lawsuits or Pre-Suit Claims under the 2008 Finest Policy.

**WHEREFORE**, National Union and CIIC request the following declaratory relief:

1. A judgment in favor of National Union declaring that National Union has no duty to defend or indemnify Pate as Trustee of the WCI Chinese Drywall Trust under the 2006 Beta Policy, the 2007 Beta Policy, and/or the 2007 Finest Policy with respect to any claims or damages arising from allegedly defective drywall supplied and/or installed by Beta and/or Finest;

2. A judgment in favor of CIIC declaring that CIIC has no duty to defend or indemnify Pate as Trustee of the WCI Chinese Drywall Trust under the 2008 Finest Policy with respect to any claims or damages arising from allegedly defective drywall supplied and/or installed by Finest;

3. A judgment in favor of National Union declaring that National Union has no duty to defend or indemnify Beta under the 2006 and 2007 Beta Policies with respect

to any claims or damages arising from allegedly defective drywall supplied and/or installed by Beta;

4. A judgment in favor of National Union declaring that National Union has no duty under the 2007 Finest Policy to defend or indemnify Finest with respect to any claims or damages arising from allegedly defective drywall supplied and/or installed by Finest;

5. A judgment in favor of CIIC declaring that CIIC has no duty under the 2008 Finest Policy to defend or indemnify Finest with respect to any claims or damages arising from allegedly defective drywall supplied and/or installed by Finest;

6. Such other relief as the Court may deem just and proper.

DATED this 12th day of July, 2010.

Respectfully submitted,

_____
Cindy L. Ebenfeld, Esq.
Florida Bar No. 0980579
HICKS, PORTER, EBENFELD & STEIN, P.A.
11011 Sheridan Street, Suite 104
Cooper City, Florida 33026
Tel: (954) 624-8700
Fax: (954) 624-8064
cebenfeld@mhickslaw.com
*Co-Counsel for Plaintiff*

Joseph A. Hinkhouse, Esq.
Sara U. Gattie, Esq.
Jocelyn P. Jopa, Esq.
HINKHOUSE WILLIAMS WALSH LLP
180 N. Stetson Avenue, Suite 3400
Chicago, Illinois 60601
Tel: (312) 784-5400

Fax: (312) 784-5499
jhinkhouse@hww-law.com
suffelman@hww-law.com
jjopa@hww-law.com
*Counsel for Plaintiff*

g:\chartis\beta drywall\pldgs\complaint.doc
4831-8380-6726, v. 1