## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA and
COMMERCE AND INDUSTRY INSURANCE
COMPANY,

Plaintiffs,

v.

BETA CONSTRUCTION LLC f/k/a BETA
DRYWALL LLC; FINEST DRYWALL, INC.;
and ROBERT C. PATE, as Trustee for the
WCI Chinese Drywall Trust,

Defendants.

CASE NO.: 8:10-cv-01541-RAL-TBM

## DEFENDANT ROBERT C. PATE'S MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendant, Robert C. Pate, as Trustee for the Chinese Drywall Trust ("Pate"),

respectfully submits this opposition to the motion for summary judgment of Plaintiffs

National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and

Commerce and Industry Insurance Company ("CIIC") (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

Plaintiffs motion for summary judgment against Pate, Beta Construction LLC

f/k/a Beta Drywall LLC ("Beta"), and Finest Drywall, Inc. ("Finest") (collectively,

"Defendants") is premature and unavailing.  Plaintiffs assert that under Florida law,

the pollution exclusions in the liability insurance policies that they sold to Beta and

Finest preclude coverage for Chinese drywall related losses.  Choice of law

discovery has not yet been conducted.  Essential facts regarding the execution of

the insurance policies have not been disclosed.  In the absence of such information,

a choice of law determination should not be made. Plaintiffs' motion should be denied or continued pursuant to Federal Rule of Civil Procedure 56(d).[1] Furthermore, Plaintiffs have not established that they are entitled to judgment as a matter of law, and issues of material fact preclude the entry of summary judgment in Plaintiffs' favor.

## FACTS

### I.     THE CHINESE DRYWALL CLAIMS

WCI Communities, Inc. and certain of its subsidiaries (collectively, "WCI") built homes and residential communities in states such as Florida, New York, New Jersey, Virginia, Maryland, and Connecticut. D.E. 17-1, ¶¶ 25-26.[2] WCI began to receive complaints of property damage and/or bodily injury allegedly arising from Chinese drywall installed in homes that WCI sold. D.E. 17-1, ¶ 27. The claimants allege damages that include increased rates of corrosion of soft metal materials (such as air conditioning coils, refrigerator tubing, electrical wires, and television connections); health issues; and tarnishing of silver and soft metal. D.E. 17-1, ¶ 29.

### II.     THE TRUST

WCI Communities, Inc. and a number of its subsidiaries ultimately filed for bankruptcy (collectively, the "WCI Debtors"). D.E. 17-1, ¶ 30. The plan of reorganization created a Chinese Drywall Trust (the "Trust") and imposed upon the Trust the WCI Debtors' liability or losses by an owner or occupant of, or person

---

[1] Should the Court (1) deny Plaintiffs' motion without prejudice or (2) continue it, Pate respectfully reserves the right to file a new or supplemental opposition to Plaintiffs' motion.

[2] "D.E." refers to the docket entries in this case.

otherwise exposed to, a home built by the WCI Debtors for damages related to Chinese drywall. D.E. 17-1, ¶ 32. The WCI Debtors transferred to the Trust their right, title, and interest in the "Insurance Coverage Actions"[3] and the "Chinese Drywall Actions"[4] and the proceeds thereof, and any right, title or interest in pursuing and receiving any and all "Insurance Recoveries."[5] D.E. 17-1, ¶ 33. The Plan also established a Chinese Drywall Trustee ("Trustee") to prosecute the Insurance Coverage Actions and Chinese Drywall Actions. D.E. 17-1, ¶ 34.

On August 26, 2009, the United States Bankruptcy Court for the District of Delaware confirmed the Plan including the creation of the Trust and the appointment of Pate as Trustee. D.E. 17-1, ¶ 35. To date, approximately 339 homeowners have

---

[3] The Plan defines "Insurance Coverage Actions" as "any rights to indemnification, reimbursement, contribution or other payment under any of the [WCI] Debtors' existing insurance policies, including the [WCI] Debtors' director and officer liability insurance policies, as of the Effective Date that may provide coverage with respect to Allowed Chinese Drywall Claims." D.E. 17-1, n.3.

[4] The Plan defines "Chinese Drywall Actions" as "the Causes of Action that the [WCI] Debtors may have against any subcontractor or other Person who installed Chinese drywall in a home built or sold by a [WCI] Debtor, directly or indirectly, any insurer of any such subcontractor or other Person, any retailer, wholesaler, distributor, manufacturer or provider of Chinese drywall that was installed in a home built or sold by a [WCI] Debtor, directly or indirectly, and/or any insurer of any such retailer, wholesaler, distributor, manufacturer or provider." D.E. 17-1, n.4.

[5] The Plan defines "Insurance Recovery," in pertinent part, as "(a) the right to pursue and receive the benefits and proceeds of any insurance policy issued to, owned by, or otherwise providing coverage to any [WCI] Debtor, including any insurance policy owned by any third party on which any [WCI] Debtor is named as an additional insured, with respect to Chinese Drywall Claims; (b) the right to pursue and receive recovery from or as a result of any Insurance Coverage Action; ... [and] (e) the right to pursue and receive any other recovery from an insurance company, in its capacity as such, with respect to Chinese Drywall Claims." D.E. 17-1, n.5.

filed claims with the Trust alleging property damage from Chinese drywall installed in their homes by the WCI Debtors.

## III.   THE PATE ACTION

In December of 2009, Judge Robert C. Pate, as the Trustee approved by the U.S. Bankruptcy Court, initiated a lawsuit against National Union and ultimately twenty other insurance companies in the United States District Court for the Eastern District of Louisiana (the "Pate Action").[6] *See* First Amended Complaint, D.E. 17-1. In his complaint, Pate seeks, *inter alia*, a declaratory judgment that the defendant liability insurance companies are obligated to pay the Trust for liabilities and losses arising from claims against WCI for the sale of homes allegedly containing Chinese drywall. *Id.* ¶¶ 56-60.

## IV.   PLAINTIFFS' FLORIDA ACTION

Seven months after Pate filed the Pate Action, Plaintiffs filed this action.  This Court entered a Case Management and Scheduling Order on October 6, 2010, providing that discovery closes on March 13, 2012 (over 7 months from now) and dispositive motions must be filed by April 13, 2012.  D.E. 33, at 1; Piazza Aff. ¶ 3.[7]

Plaintiffs filed their motion for summary judgment on July 15, 2011.  D.E. 47; Piazza Aff. ¶ 4.  Pate has served Plaintiffs with two sets of interrogatories and one set of document requests.  *Id.* ¶¶ 6-7.  Pate will notice depositions after discovery

---

[6] The Pate Action, styled *Pate v. Am. Int'l Specialty Lines Ins. Co.*, C.A. No. 09-7791, forms part of *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047.

[7] "Piazza Aff." refers to the Affidavit of Anna M. Piazza, which was filed contemporaneous with this memorandum.

responses identify the individuals involved in the procurement and execution of the insurance policies. *Id.* ¶ 10. Additionally, and not coincidentally, Plaintiffs' counsel served choice of law discovery on WCI in the Pate Action on August 1, 2011. *Id.* ¶¶ 11-12.[8] Responses to these discovery requests neither have become due nor been served. *Id.* ¶ 13.

## V.   THE INSURANCE POLICIES

The four insurance policies at issue in this case are:  National Union Policy No. BE 6564380 sold to Beta; National Union Policy No. BE 6564484 sold to Beta; National Union, Policy No. BE 5346464 sold to Finest; and CIIC Policy No. BE 012779651 sold to Finest (the "2008 Finest Policy") (collectively, the "Policies"). WCI is a named or additional insured under the Policies.  D.E. 17-1, ¶ 49; *see* Ex. A. Pate seeks coverage under the Policies on the Trust's behalf.  D.E. 17-1, ¶ 60.

The Policies contain a "Total Pollution Exclusion Endorsement" that provides:

This insurance does not apply to:

1.  Any **Bodily Injury**, **Property Damage** or **Personal Injury** arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere in the world at any time;[9]

---

[8] National Union's and CIIC's lawyers in this action represent Lexington Insurance Company ("Lexington") and Chartis Specialty Insurance Company ("Chartis") (f/k/a American International Specialty Lines Insurance Company) in the Pate Action.  Piazza Aff. ¶ 11. Lexington, Chartis, National Union, and CIIC are American International Group subsidiaries.

[9] The 2008 Finest Policy contains a substantively identical exclusion except for the first paragraph, which states:

1.  Any **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time.

2.   Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3.   Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

D.E. 1-1, 1-2, 1-3.  The Policies define "Pollutants" as:

any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

D.E. 1-1, 1-2, 1-3, 1-4.

## ARGUMENT

## I.   STANDARD OF REVIEW

"Summary judgment is appropriate only when … 'there is no genuine issue as to any material fact' and the moving party is entitled to judgment as a matter of law." *Fattorusso v. M/V WANDERER II*, No. 2:10-cv-201-FtM-36SPC, 2011 WL 2910175, at *1 (M.D. Fla. July 19, 2011).  In deciding whether the movant has met this burden, "the court must consider all evidence in the light most favorable to[,] … and must draw all reasonable inferences in favor of the nonmoving party." *Constable v. Agilysis, Inc.*, No. 8:10-cv-01778, 2011 WL 2446605-EAK-TGW, at *3 (M.D. Fla. June 15, 2011) (internal citation omitted).  Moreover, "[o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is

D.E. 1-4.

indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Here, Plaintiffs have failed to demonstrate that they are entitled to judgment as a matter of law, and issues of material fact preclude the entry of summary judgment.

## II.   THE COURT SHOULD DENY OR CONTINUE PLAINTIFFS' MOTION BECAUSE THERE ARE INSUFFICIENT FACTS IN THE RECORD TO PERFORM A CHOICE OF LAW ANALYSIS

The Court should deny or continue Plaintiffs' motion pursuant to Federal Rule of Civil Procedure 56(d).  "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).  When an insurance company moved for summary judgment on the pollution exclusion in an insurance coverage case involving Chinese drywall related damages, this Court (J. Bucklew) granted a motion to continue under Rule 56(d) to allow for choice of law discovery.  *See Granite State Ins. Co. v. Am. Building Materials, Inc.*, No. 8:10-cv-1542-T-24 EAJ, 2011 WL 2446633, *1-2 (M.D. Fla. June 15, 2011).  Specifically, the Court determined that "a continuance of the summary judgment proceedings will better serve the interests of justice" when the insurance companies' summary judgment motion "was filed on April 27, 2011, long before the July 5, 2011 discovery cutoff and the August 1, 2011 dispositive motion deadline set by the Court."  *Id.* at *2.  The Court ordered that the parties "are permitted to continue engaging in discovery until … July 5, 2011."  *Id.*

In this case, choice of law discovery is necessary to determine which state law should apply. *See infra* at 8-15. Discovery does not close in this action until March 13, 2012 and the dispositive motion deadline is not until April 13, 2012. D.E. 33 at 1; Piazza Aff. ¶ 3. The parties only just began choice of law discovery, no responses have become due or been served, and Pate likely will need to serve additional discovery as responses identify relevant individuals and facts. Piazza Aff. ¶¶ 6-13. As in *Granite State Ins. Co.*, and in accordance with Rule 56(d), Plaintiffs' motion should be denied or continued. Defendants should be allowed to engage in discovery on issues including choice of law until March 13, 2012.

### A.   The Choice-Of-Law Analysis Under Florida Law Is *Lex Loci Contractus*

In diversity cases, federal district courts apply the choice of law analysis of the forum in which they sit. *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997). Florida choice-of-law principles, therefore, apply in this case.

Plaintiffs misinform this Court that the "most significant relationship" test under Restatement (Second) of Conflicts of Laws may apply. *Memo*, 3. In 2006, the Florida Supreme Court unequivocally reiterated that *lex loci contractus* is the controlling choice of law doctrine in contract (including insurance policy) cases. *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163-64 (Fla. 2006).[10]

---

[10] Though *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116 (11th Cir. 1990) – cited by Plaintiffs – used the Restatement (Second) of Conflicts of Laws, and though this approach was affirmed in *LaFarge*, 118 F.3d at 1515, which Plaintiffs also cited, the *Roach* court restated its rejection of the most significant relationship test. 945 So. 2d at 1163-64.

**B.    Lex Loci Contractus Requires Discovery Concerning How, When, And Where The Policies Were Executed**

The rule of *lex loci contractus* "provides that the law of the jurisdiction where the [insurance] contract was *executed* governs the rights and liabilities of the parties in determining an issue of insurance coverage." *Valiant Ins. Co. v. Progressive Plumbing, Inc.*, No. 5:06-cv-410-Oc-10GRJ, 2007 WL 2936241, at *2 (M.D. Fla. Oct. 9, 2007) (emphasis in original). "The determination of where a contract was executed is fact-intensive...." *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1092 (11th Cir. 2004). The place "where the last act necessary to complete the contract [wa]s done" is controlling. *Id.* at 1093; *Jemco, Inc. v. United Parcel Serv., Inc.*, 400 So. 2d 499, 500 (Fla. Dist. Ct. App. 1981).

In determining when the last act necessary to execute an insurance policy took place, "Florida's application of lex loci contractus analysis has not developed in any easily discernable, straight line fashion." *In re Celotex*, 194 B.R. 668, 671 (Bankr. M.D. Fla. 1996). In *Celotex*, an insurance coverage action, the court held that delivery of the binders to the policyholder's broker was the last act, and that such delivery took place in Illinois. *Id.* at 668, 673. The court stated:

> the law is clear that delivery of the binders of insurance to the particular agents in Illinois is sufficient to bind all the parties and, thus, to be the final act required to secure coverage under the contracts.

*Id.* Moreover, delivery of the policy did not constitute the last act. *Id.* at 674.

In *CNL Hotels & Resorts, Inc. v. Houston Casualty Co.*, 505 F. Supp. 2d 1317, 1318-21 (M.D. Fla. 2007), the court held that New York law applied to the

insurance claim of the policyholder, CNL. *Id.* at 1321. In determining where the policy was executed, the court relied on the testimony of a CNL officer, who stated his understanding that coverage took effect when the broker issued the binder from its New York office. *Id.* at 1321. Additionally, an insurance company representative signed the policy, and delivered it to the broker, in New York. *Id.*[11]

Despite *Celotex*, some Florida courts have held acts other than delivery of the insurance binder as the last act necessary to bind coverage, including the insurance company's oral agreement to bind coverage and the policy's place of signature or countersignature. *See, e.g., Prime Ins. Syndicate*, 363 F.3d at 1093 (last act took place where the policyholder was located when the insurance company orally agreed to bind coverage); *CNL Hotels*, 505 F. Supp. 2d at 1321 (finding New York law applied because, *inter alia,* the insurance company signed the policy in New York); *Shapiro*, 899 F.2d at 1119 (stating that under *lex loci contractus,* California law would apply because the contract was issued and countersigned in California through a California broker.).[12]

_____

[11] The U.S. District Court (M.D. Fla.) rejected CNL's assertion that Florida law governed because: (1) CNL's principal place of business was in Florida; (2) the policy was issued for delivery and actually delivered to CNL in Florida; (3) the insurance company was licensed in Florida; (4) the policy contained riders specific to Florida law; and (5) taxes were paid in connection with the policy in Florida. *Id.* at 1320.

[12] Indicative of the current flux in the application of *lex loci contractus*, and relevant to the instant facts involving the insuring of a subcontractor's operations, the Eleventh Circuit recently certified the following question to the Florida Supreme Court:

> Does the doctrine of lex loci contractus apply to a dispute about coverage that involves a policy for comprehensive general liability insurance, made outside of Florida, that insures the operations of a contractor on a project located in Florida?

In this case, under the doctrine of *lex loci contractus*, Pate requires discovery to discern how, where, and when the Policies were executed.  Currently, the record is devoid of facts detailing, *inter alia*:  (1) where, from whom, and to whom the insurance binders were sent; (2) where and by whom the Policies were signed and countersigned;[13] (3) where any oral agreement was reached to bind coverage; and (4) when and where the parties considered the Policies to be complete, and who those relevant parties were.  Piazza Aff. ¶ 8.  In addition to the interrogatories and document requests that he served, Pate also may need to depose Beta's and Finest's brokers and the Plaintiffs' underwriters to determine the Policies' state of execution.  *Id.* ¶ 10.  Plaintiffs' summary judgment motion should not be decided without discovery of these facts for a choice of law determination.[14]

### C.    Plaintiffs Have Not Established That Florida Law Applies Under Lex Loci Contractus

Without having taken any choice of law discovery, and with no more than two sentences of analysis, Plaintiffs baldly assert that Florida law applies.  *Memo*, 3.  In support of their cursory assertion that the Policies were executed in Florida, Plaintiffs rely solely on the Policies' declaration pages, which list Florida addresses for Beta,

---

*U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1035 (11th Cir. 2008).

[13] The National Union policies include illegible signatures of "authorized representatives." D.E. 1-1, 1-2, 1-4.  Discovery regarding the representatives' identities is necessary.

[14] In addition to choice of law discovery, discovery is necessary as to the nature of the underlying claims.  Having taken no such discovery, Plaintiffs coin an amorphous term – "the Drywall Claims" – and improperly utilize pleadings from other cases, in which Pate is not a party, to construct the claims to their advantage.  The truth is, Plaintiffs have absolutely no information on the underlying claims in this litigation, and yet they ask this Court to preclude insurance coverage for them.

Finest, and the alleged insurance brokers. *Id.* Based on these addresses alone,

Plaintiffs conclude that: (1) Beta's and Finest's insurance brokers are located in

Florida and (2) the Policies were delivered to Finest and Beta in Florida. *Id.*

Plaintiffs' argument fails to establish the application of Florida law for at least

three reasons. First, addresses on a policy's declarations page are insufficient to

prove where the Policies were delivered. *See, e.g., Liberty Mut. Fire Ins. Co. v.*

*Woodfield Mall, L.L.C.*, 941 N.E.2d 209, 219 (Ill. App. Ct. 2010) (rejecting

defendant's argument that New York law applied because declarations page listed

policyholder's New York address and, therefore, indicated policy was delivered in

New York, where broker testified that he personally delivered the policy to the

policyholder's risk manager in Ohio).

Second, as discussed above, delivery of an insurance policy likely does not

constitute execution for purposes of *lex loci contractus*, and Plaintiffs provide no

support to the contrary. *See CNL Hotels*, 505 F. Supp. 2d at 1321 (rejecting

argument that Florida law applied because policy was "issued and delivered" in

Florida, stating that "the important factor is the place of execution of the contract, not

the place or places to which it was (eventually) mailed.").

Third, even assuming the Policies were delivered to Florida, the parties in this

case may not have considered the Policies' delivery to be the last act necessary to

execute the Policies. *See, e.g., id.* (crediting the witness' testimony that it was his

understanding that coverage took effect when the broker issued the binder).[15]

Accordingly, Plaintiffs have not established that Florida law applies under *lex loci contractus*.

### D.   Discovery In This Case Could Point To The Application Of Another State's Law

Choice of law discovery is especially important in a case involving the pollution exclusion because "there exists [on this issue] not just a split of authority, but an absolute fragmentation of authority." *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 800 (Ala. 2003) (collecting cases). A major division in authority concerns whether the pollution exclusion applies only to traditional types of environmental and industrial pollution, or whether it also applies to the spread of any allegedly toxic substances, even indoors. *See generally MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205 (Cal. 2003).

For example, two courts recently held that pollution exclusions similar to those at issue did not preclude coverage for property damage and bodily injury resulting from Chinese drywall. *In re Chinese Manufactured Drywall Products Liab. Litig.*, 759 F. Supp. 2d 822 (E.D. La. 2010); *Finger v. Audubon Ins. Co.*, No. 09-8071, 2010 WL 1222273 (La. Civ. Dist. Ct. Mar. 22, 2010). In *Chinese Manufactured Drywall*, the U.S. District Court held that the pollution exclusion did not preclude coverage for Chinese drywall related losses because, *inter alia*: (1) the presence of Chinese drywall in the homes fell outside the Louisiana Supreme

---

[15] Contrary to Plaintiffs' assertion, and as demonstrated above, the location of the properties and exposure has no bearing on a choice of law analysis under *lex loci contractus*.

Court's concern with, and focus upon, environmental pollution for purposes of the exclusion; (2) the homeowners were not polluters; and (3) Chinese drywall did not cause environmental pollution by its presence in the homes. 759 F. Supp. 2d at 843.[16]

Similarly, in *Finger*, the court struck the pollution exclusion as an affirmative defense because the exclusion "[did] not, and was never intended, to apply to residential homeowners' claims for damages caused by substandard building materials." 2010 WL 1222273, at ¶ 19. Moreover, the fact that Chinese drywall allegedly released various gasses into the structure did not render it a "pollutant." *Id.* at ¶ 20; *see also Builders Mut. Ins. Co. v. Parallel Design & Dev. LLC*, No. 4:10cv68, 2011 WL 1988402, at *14 (E.D. Va. May 13, 2011) (holding that undefined term "pollutants" in pollution exclusion did not unambiguously apply to preclude coverage for damages resulting from Chinese drywall).

There are other jurisdictions relevant to a choice of law analysis in this action, including New York, Pennsylvania, and New Jersey. National Union is a Pennsylvania corporation with a New York principal place of business. D.E. 1, ¶ 5. CIIC is a New York corporation with a New York principal place of business. D.E. 1, ¶ 6. The Policies provide addresses for National Union in New York and Pennsylvania, and provide an address in New Jersey for a related company, "AIG

---

[16] Plaintiff National Union is a party to this multi-district litigation, and some of the Policies are at issue in that litigation.

Small Business." D.E. 1-1, 1-2, 1-3, 1-4. Accordingly, it is possible that the last act necessary to execute the Policies took place in one of these states.

Moreover, New York, Pennsylvania, and New Jersey would likely follow suit with the aforementioned decisions. *See, e.g., Belt Painting Corp. v. TIG Ins. Co.*, 795 N.E.2d 15 (N.Y. 2003) (holding under New York law that the total pollution exclusion was ambiguous and did not apply to injuries arising from indoor exposure to fumes that drifted a short distance from their intended use to cause inhalation injuries); *Lititz Mut. Ins. Co. v. Steely*, 785 A.2d 975, 981 (Pa. 2001) (holding that pollution exclusion did not apply to inhalation of lead-paint dust because dust resulted from continual deterioration and slow exfoliation, not "discharge," "dispersal," "release," or "escape"); *Nav-Its, Inc. v. Selective Ins. Co. of Am.*, 869 A.2d 929 (N.J. 2005) (holding that the insurance company's interpretation of the pollution exclusion was "overly broad" and "unfair" and did not apply to inhalation of floor sealant fumes but only to instances of traditional environmental pollution).

As a choice of law determination will have a significant effect on the interpretation of the pollution exclusions, Plaintiffs' motion should be denied or continued pursuant to Federal Rule of Civil Procedure 56(d).

## III. THE COURT SHOULD DENY PLAINTIFFS' MOTION BECAUSE PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW AND ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT

An insurance company bears "the burden of establishing that the loss was sustained in a fashion for which coverage was excluded." *Hollywood Flying Servs., Inc. v. Compass Ins. Co.*, 597 F.2d 507, 508 (11th Cir. 1979). Moreover, "'[w]hen an

… [insurance company] relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation.'" *Castillo v. State Farm Florida Ins. Co.*, 971 So. 2d 820, 824 (Fla. Dist. Ct. App. 2007) (emphasis added). "[E]xclusions are to be construed narrowly in a manner which affords the broadest coverage consistent with the exclusion." *Colony Ins. Co. v. Nicholson*, No. 10-60042, 2010 WL 3522138, at *3 (S.D. Fla. Sept. 8, 2010).

### A.     Plaintiffs' Have Failed To Demonstrate That They Are Entitled To Judgment As A Matter Of Law

"[T]he duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims by some other means." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001). "The only exception to this general principle is if the court can determine that the allegations in the complaint could under no circumstances lead to a result which would trigger the duty to indemnify." *Id.* (emphasis added). Here, Plaintiffs have made no such showing.

In support of their motion, Plaintiffs misinform this Court that "every federal and state court to apply Florida law over the past twelve years … has applied the exclusion to bar coverage for injury or damage caused by releases of pollutants." *Memo*, 5. This is incorrect. Indeed, not even every Florida court has applied the pollution exclusion to preclude coverage for *Chinese drywall* related losses. *See, e.g., Auto-Owners Ins. Co. v. Am. Bldg. Materials, Inc.*, No. 8:10-cv-313-T-24-AEP,

2011 WL 1878236, at *4 (M.D. Fla. May 17, 2011) (holding that total pollution exclusion did not preclude coverage for Chinese drywall damages).

Plaintiffs rely substantially on *General Fidelity Insurance Co. v. Foster*, No. 9:09-cv-80743 (S.D. Fla. Mar. 24, 2011) for the proposition that the Policies' pollution exclusions bar coverage for Chinese drywall claims. *Foster* is not binding on this Court. *See Granite States Ins. Co.*, 2011 WL 2446633, at *1 (stating that the United States District Court for the Middle District of Florida (Bucklew, J.) "is not bound by the *Foster* decision").

Significant differences exist between *Foster* and the instant case. The *Foster* court found that the policies at issue were executed in Florida. In fact, the parties agreed that Florida substantive law applied. D.E. 47-21, at 7. Here, Pate contests that Florida law applies and information pertinent to a choice of law determination is lacking.[17] Furthermore, the *Foster* court determined that the pollution exclusion applied without any extensive analysis.[18] Even though the insurance policies at issue did not define "irritant" or "contaminant," the court looked at the underlying allegations of tarnishing, odors, and respiratory, sinus, and eye problems and summarily concluded that "[t]he presence of the excessive amounts of sulfur and strontium <u>obviously</u> irritates and contaminates." D.E. 47-21, at 8 (emphasis added). Moreover, where a policy defines "pollutant" as an "irritant" or "contaminant," the

[17] In *Foster*, the parties conducted discovery before summary judgment was entered against the defendants. *Foster* D.E. 97-99. Here, Plaintiffs seek summary judgment in the absence of discovery.

[18] *Foster* currently is on appeal to the Eleventh Circuit, No. 11-11888-D (11th Cir. May 2, 2011).

court should look to whether the disputed substance is alleged to have "any particular effect commonly thought of as 'irritations' or 'contamination.'" *Nova Cas. Co. v. Waserstein*, 424 F. Supp. 2d 1325, 1334 (S.D. Fla. 2006).  Even though gypsum (a drywall component) and drywall itself have "no particular effect commonly thought of as irritations or contamination," the court held that this particular <u>defective</u> gypsum did.  D.E. 47-21, at 9.  It defies logic that a defective product such as the gypsum comprising Chinese drywall, which unexpectedly (and allegedly) contains elevated levels of sulfur and strontium, has a particular effect <u>commonly</u> thought of as "irritations" or "contamination."

Prior to *Foster*, no Florida court had held that the circumstances associated with Chinese drywall - i.e., where the harm is primarily property damage (as opposed to bodily injury) that occurs indoors, and is caused by a defective product that was not supposed to contain elevated chemicals - warranted application of the pollution exclusion.  Implicit in *Deni Associates of Florida, Inc. v. State Farm Fire & Casualty Insurance Co.*, 711 So. 2d 1135, 1140 (Fla. 1998) and its progeny, is that the pollution exclusion was unambiguous as applied to indoor "irritation" or "contamination" resulting primarily in bodily injury claims.  *See, e.g., Auto Owners Ins. Co. v. City of Tampa Hous. Auth.*, 231 F. 3d 1298, 1300 (11th Cir. 2000) (denying coverage for bodily injury claims resulting from ingesting and inhaling lead from paint on the walls of a housing authority dwelling); *Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co.*, 157 F.3d 843, 845 (11th Cir. 1998) (holding that pollution exclusion barred coverage for bodily injury claims resulting from inhalation

of polyurethane foam).  Inherent in the terms "irritate" and "contaminate," which are not defined in the Policies, is that a living organism, not property, sustained the damage.  Chinese drywall causes primarily property damage.  It hardly could be said that Chinese drywall "irritated" the metal and silver components in the homes, air conditioners, and refrigerators.  Indeed, even the *Deni* court acknowledged that a literal application of the pollution exclusion to deny coverage would not always be appropriate, stating, "[s]uffice it to say that insurance policies will not be construed to reach an absurd result."  711 So. 2d at 1140.  *Foster* reaches such an absurd result, and should not be followed by this Court.

### B.   Substantial Issues Of Fact Preclude Summary Judgment

Significant issues of fact preclude Plaintiffs' motion for summary judgment.  Issues of fact preclude a court's application of the pollution exclusion where factual record allegations in the complaint are still undeveloped.  *See, e.g., Florida Farm Bureau Gen. Ins. Co. v. Ins. Co. of N. Am.*, 763 So. 2d 429, 433-34 (Fla. Dist. Ct. App. 2000).  Such issues of fact in this case include, *inter alia* whether the:  (1) substances contained in defective Chinese drywall constitute "pollutants" under the Policies; (2) gypsum in the drywall has the "particular effect" of causing irritation or contamination; (3) pollution exclusions were meant to apply to claims of primarily indoor property damage; (4) manner in which the alleged sulfur and other substances entered the air was a "discharge" or "release" under the Policies; and (5)

Office of Insurance Regulation received and approved the Policies' pollution exclusion.[19] These issues of material fact preclude the entry of summary judgment.

## CONCLUSION

For the foregoing reasons, we respectfully request that this Court deny Plaintiffs' motion for summary judgment, or continue it until discovery is complete and deny it thereafter.

Dated:     August 5, 2011

/s/ Anna M. Piazza
Robert M. Horkovich, Esq.
Anna M. Piazza, Esq.
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY  10020
T:  212-278-1000
F:  212-278-1733
rhorkovich@andersonkill.com
apiazza@andersonkill.com

*Trial counsel for Defendant Robert C. Pate, as Trustee for the Chinese Drywall Trust*

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2011, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.

/s/ Anna M. Piazza
Anna M. Piazza

---

[19] If not, the pollution exclusion is likely unenforceable in this case. *See CNL Hotels & Resorts, Inc. v. Twin City Fire Ins. Co.*, 291 F. App'x 220, 225 (11th Cir. 2008) (remanding to determine whether endorsement was valid under Florida law) (citing Fla. Stat. § 627.410(1) (requiring filling with and approval of forms by the Office of Insurance Regulation before the forms can be used in insurance policies in Florida).