## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA and COMMERCE AND INDUSTRY INSURANCE COMPANY,<br><br>        Plaintiffs,<br><br>v.<br><br>BETA CONSTRUCTION LLC f/k/a BETA DRYWALL LLC; FINEST DRYWALL, INC.; and ROBERT C. PATE, as Trustee for the WCI Chinese Drywall Trust,<br><br>        Defendants. | CASE NO.: 8:10-cv-01541-RAL-TBM |

## DEFENDANT ROBERT C. PATE'S STATEMENT OF DISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Case Management Order Paragraph 6(c), Defendant, Robert C. Pate, as Trustee for the Chinese Drywall Trust ("Pate"), respectfully submits this Statement of Disputed Facts in response to the Statement of Undisputed Facts submitted by Plaintiffs National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and Commerce and Industry Insurance Company ("CIIC") (collectively, "Plaintiffs") in support of their motion for summary judgment. The following facts are disputed:

## I.    BACKGROUND

1.    In or about 2006, as a result of the U.S. housing boom, domestically manufactured drywall was in short supply.

**Pate's Response:** Disputed on the basis that the statement is overbroad and that Plaintiffs do not provide any citation in the record to support their "fact."

2.      Many property owners claiming to have defective Chinese

drywall in their homes have made claims and/or filed lawsuits against the

manufacturers, distributors and installers of the drywall as well as builders and

developers.

**Pate's Response:**  Disputed on the basis that the statement is overbroad and that
Plaintiffs do not provide any citation in the record to support their "fact."

3.      National Union and CIIC issued commercial umbrella liability

policies to two such drywall installer subcontractors as named insureds, Beta

Construction LLC f/k/a Beta Drywall LLC ("Beta") and Finest Drywall, Inc. ("Finest").

**Pate's Response:**  Not disputed.

4.      Claims have been asserted against Beta directly, which have

not been tendered under the policies issued to Beta.

**Pate's Response:**  Disputed on the basis that Plaintiffs do not provide any citation
in the record to support their "fact."

5.      Claims have also been asserted against WCI Communities,

Inc., a developer, which alleges that it contracted with Beta and Finest for drywall

installation services.  The WCI Chinese Drywall Trust, which was formed in Chapter

11 bankruptcy proceedings to assume the Chinese drywall-related liabilities of WCI

Communities, Inc., is seeking as much as $164 million in proceeds from policies

issued directly to WCI as the named insured, as well as coverage as an additional

insured under policies issued to its numerous alleged drywall installers, including

Beta and Finest.  *See* Amended Complaint in *Pate v. Am. Int'l Specialty Lines Ins.*

*Co., et al.*, 2:09-cv-07791 (E.D. La.) ("La. Amended Complaint"), D.E. 17-1.[1]

**Pate's Response:**  Disputed on the basis that Pate is seeking coverage under policies naming WCI as the named insured with limits totaling at least $164 million. D.E. 17-1, ¶¶ 38-49.  Further disputed on the basis that the Chinese Drywall Trust has assumed the Chinese-drywall related liabilities of the "WCI Debtors," which includes WCI Communities, Inc. and a number of its subsidiaries.  D.E. 17-1, ¶ 30-32.

## II.    THE PARTIES

6.    Beta is a Florida corporation, which provided drywall installation subcontractor services to developers in Florida.

**Pate's Response:**  Disputed on the basis that Plaintiffs do not provide any citation in the record to support their "fact."

7.    Finest is a Florida corporation, which provides drywall installation subcontractor services to developers in Florida.

**Pate's Response:**  Disputed on the basis that Plaintiffs do not provide any citation in the record to support their "fact."

8.    National Union issued commercial umbrella liability policies to Beta as follows:

| Insurer | Named Insured | Policy No. | Policy Period | Moniker |
|---|---|---|---|---|
| National Union Fire Insurance Company of Pittsburgh, PA | Beta Drywall LLC | BE 6564380 | February 28, 2006-February 28, 2007 | "2006 Beta Policy" |
| National Union Fire Insurance Company of Pittsburgh, PA | Beta Construction LLC | BE 6564484 | February 28, 2007-February 28, 2008 | "2007 Beta Policy" |

---

[1] Exhibits are identified as set forth in the court docket. For example, D.E. 17-1 is Exh. 1 to docket entry 17.

(The 2006 and 2007 Beta Policies issued by National Union can be found at D.E. 1-1 and 1-2).

**Pate's Response:**  Not disputed that the above-referenced insurance policies have the same policy numbers as those insurance policies produced by Plaintiffs in this action.  D.E. 1-1, 1-2.

9.     National Union and CIIC issued commercial umbrella liability policies to Finest:

| Insurer | Named Insured | Policy No. | Policy Period | Moniker |
|---|---|---|---|---|
| National Union Fire Insurance Company of Pittsburgh, PA | Finest Drywall Inc. | BE 5346464 | September 15, 2007-September 15, 2008 | "2007 Finest Policy" |
| Commerce and Industry Insurance Company | Finest Drywall Inc. | 012779651 | September 15, 2008-September 15, 2009 | "2008 Finest Policy" |

(The 2007 and 2008 Finest Policies issued by National Union and CIIC can be found at D.E. 1-3 and 1-4).

**Pate's Response:**  Not disputed that the above-referenced insurance policies have the same policy numbers as those insurance policies produced by Plaintiffs in this action.  D.E. 1-3, 1-4.

10.     WCI Communities, Inc. was a developer of homes and residential communities in a number of states, including Florida.  D.E. 17-1, ¶ 25.  Its projects included single-family homes, villas, condominiums, and luxury high-rise towers.  D.E. 17-1, ¶ 26.

**Pate's Response:**  Not disputed.

11.     In 2008 and 2009, WCI Communities, Inc. and a number of its subsidiaries ("WCI") filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in the matter of *In re WCI*

*Communities, Inc., et al.*, Chapter 11, No. 08-11643. D.E. 17-1, ¶ 30. The plan of reorganization created the WCI Chinese Drywall Trust to assume the Chinese drywall-related liabilities of WCI. D.E. 17-1, ¶ 31. Plaintiff, Robert C. Pate was appointed to serve as Trustee of the WCI Chinese Drywall Trust. D.E. 17-1, ¶ 35.

**Pate's Response:** Not disputed, except that Plaintiffs' citations do not support the facts alleged. *See* D.E. 17-1, ¶¶ 35, 32.

       12.    The pertinent details regarding the creation of the WCI Chinese Drywall Trust and the appointment of Robert C. Pate as its Trustee were described by Pate in the Amended Complaint filed in *Pate v. Am. Int'l Specialty Lines Ins. Co., et al.*, 2:09-cv-07791 (E.D. La.):

<u>The WCI Chinese Drywall Trust</u>

       33.    On the effective date of the [Second Amended Joint Chapter 11] Plan [of Reorganization], the WCI Debtors transferred to the WCI Chinese Drywall Trust their right, title, and interest in the "Insurance Coverage Actions"[2] and the "Chinese Drywall Actions"[3] and the proceeds thereof, and any right, title or interest in pursuing and receiving any and all "Insurance Recoveries."[4]

---

[2]    "The Plan defines 'Insurance Coverage Actions' as 'any rights to indemnification, reimbursement, contribution or other payment under any of the [WCI] Debtors' existing insurance policies, including the [WCI] Debtors' director and officer liability insurance policies, as of the Effective Date that may provide coverage with respect to Allowed Chinese Drywall Claims.'" *See* D.E. 17-1, FN3.

[3]    "The Plan defines 'Chinese Drywall Actions' as 'the Causes of Action that the [WCI] Debtors may have against any subcontractor or other Person who installed Chinese drywall in a home built or sold by a [WCI] Debtor, directly or indirectly, any insurer of any such subcontractor or other Person, any retailer, wholesaler, distributor, manufacturer or provider.'" *See* D.E. 17-1, FN4.

[4]    "The Plan defines 'Insurance Recovery,' in pertinent part, as '(a) the right to pursue and receive the benefits and proceeds of any insurance policy issued to, owned by, or otherwise providing coverage to any [WCI] Debtor, including any insurance policy owned by any third party on which any [WCI] Debtor is named as an additional insured, with respect to Chinese Drywall Claims; (b) the right to pursue and receive

34.   The Plan also established a Chinese Drywall Trustee to prosecute the Insurance Coverage Actions and Chinese Drywall Actions.

35.   The United States Bankruptcy Court for the District of Delaware entered an order confirming the Plan on August 26, 2009, including the creation of the WCI Chinese Drywall Trust, and approving the appointment of Robert C. Pate as the Chinese Drywall Trustee.

36.   Over 700 homeowners allegedly have Chinese Drywall installed in their homes and may seek recovery through the WCI Chinese Drywall Trust.

*     *     *

*See* D.E. 17-1, ¶¶ 33-36.

**Pate's Response:**  Not disputed that the above constitutes an accurate transcription of the portion of the First Amended Complaint quoted.

13.   On December 23, 2009, Robert C. Pate, as Trustee of the WCI Chinese Drywall Trust ("Pate"), brought an action in the U.S. District Court for the Eastern District of Louisiana captioned *Pate v Am. Int'l Specialty Lines Ins. Co., et al.*, 2:09-cv-07791 (the "Pate Action"), seeking to obtain coverage for the Chinese drywall-related claims asserted against it under policies issued directly to WCI with limits totaling $164 million, as well as policies issued to WCI's numerous alleged drywall installers, including Beta and Finest. *See* D.E. 17-1.

**Pate's Response:**  Disputed on the basis that Pate is seeking coverage under policies naming WCI as the named insured with limits totaling at least $164 million. D.E. 17-1, ¶¶ 38-49.

---

recovery from or as a result of any Insurance Coverage Action; . . . [and] (e) the right to pursue and receive any other recovery from an insurance company, in its capacity as such, with respect to Chinese Drywall Claims." *See* D.E. 17-1, FN5.

14.   Pate asserted that the WCI Chinese Drywall Trust is entitled to coverage as an additional insured or additional named insured under the 2007 Beta Policy and the 2008 Finest Policy because, he alleged, Beta and Finest supplied and/or installed Chinese Drywall in the underlying claimants' homes.  D.E. 17-1, ¶¶ 37, 49-50.

**Pate's Response:**  Not disputed.

15.   Several times, Pate has sought the participation of National Union and CIIC, as insurers of Beta and Finest, in mediations and settlement discussions, asserting that National Union and CIIC have an immediate obligation to indemnify the WCI Trust for its Chinese drywall-related liabilities.

**Pate's Response:**  Disputed as an improper reference to settlement discussions precluded by Federal Rule of Evidence 408.

16.   Pate has not established that it qualifies as an additional insured under the National Union and CIIC policies issued to Beta and Finest.

**Pate's Response:**  Disputed. *See* Ex. A.  Further disputed on the basis that discovery is ongoing and is needed from brokers, National Union, and CIIC regarding WCI's status as an additional insured under the insurance policies.

## III.   THE UNDERLYING DEFECTIVE DRYWALL CLAIMS

17.   Beta has been named in a number of lawsuits asserting that it installed defective Chinese drywall in plaintiffs' homes.  (To date, despite repeated requests for information by National Union, Beta has not responded or sought coverage under the 2006 or 2007 Beta Policies.)

**Pate's Response:**  Disputed on the basis that Plaintiffs do not provide any citation in the record to support their "fact."

18.     Pate alleges that owners of at least 96 homes have asserted claims against WCI or the WCI Chinese Drywall Trust concerning Chinese drywall allegedly installed by Beta or Finest.   The *Pate* Action contains the following allegations regarding the Drywall Claims:

<u>The Underlying Claims</u>

27.     In 2006, WCI began to receive complaints of property damage and/or bodily injury allegedly arising from Chinese Drywall[5] installed in homes that WCI sold in Florida, including areas such as Fort Lauderdale, Fort Myers, and Bradenton.

28.     The homeowners closed on these homes primarily between September 5, 2006 and September 12, 2008.

29.     The claimants allege damages that include increased rates of corrosion of soft metal materials throughout the houses (such as air conditioning coils, refrigerator tubing, electrical wires, and television connections); various health issues allegedly arising from the drywall; and tarnishing of silver and soft metal within the homes.

\*       \*       \*

*See* D.E. 17-1, ¶¶ 27-29.

**Pate's Response:** Disputed on the basis that Plaintiffs' citation to the record does not support their "fact" that 96 homes have asserted claims against WCI or the WCI Chinese Drywall Trust concerning Chinese drywall allegedly installed by Beta or Finest.

19.     The WCI Chinese Drywall Trust developed Trust Distribution Procedures setting forth the process for resolving all Chinese Drywall claims asserted against the WCI Debtors.   The Trust Distribution Procedures establish

---

[5]     Footnote 2 of the Pate Action states, "As used herein, the term 'Chinese Drywall' includes drywall manufactured in China as well as drywall manufactured domestically that contains recycled drywall from China." *See* D.E. 17-1, FN2.

**Pate's Response:**     Not disputed.

evidentiary criteria for the Chinese Drywall claims, a fund for the claims, and Scheduled Values and Maximum Values for the claims, which were developed "considering the rights claimants would have in the court system absent the bankruptcy, with the intention of achieving a fair allocation of the assets of the Chinese Drywall Trust among claimants." *See* Exh. A, ¶ 2.1. The Trust Distribution Procedures are implemented and administered by Pate, as Trustee of the WCI Chinese Drywall Trust. *See* Exh. A, p. 1.

**Pate's Response:**  Not disputed.

20.    Pate, in his capacity as Trustee of the WCI Chinese Drywall Trust, signed the modified Chinese Drywall Property Damage and Personal Injury Settlement Trust Distribution Procedures ("Trust Distribution Procedures") on December 17, 2010. *See* Exh. A, p. 33.

**Pate's Response:**  Not disputed.

21.    On March 11, 2011 the WCI Chinese Drywall Trust began accepting claim forms from underlying claimants pursuant to the Trust Distribution Procedures. The deadline for underlying claimants to submit their claim forms to the WCI Chinese Drywall Trust was May 10, 2011.

**Pate's Response:**  Disputed on the basis that Plaintiffs do not provide any citation in the record to support their "fact."

22.    The Trust Distribution Procedures signed by Pate, in his capacity as Trustee of the WCI Chinese Drywall Trust, characterize the defective drywall as follows:

[2] As used herein, "Chinese drywall" refers to drywall manufactured in China, installed into homes and other structures built by Old WCI and subsequently causing the "rapid and recurring corrosion of metals inside homes." See Florida D.O.H. website, http://www.doh.state.fl.us/ environment/community/indoorair/drywall .html." See Exh. B, FN2. Chinese drywall has also been blamed for a noxious, sulphur-like odor. See Exh. B, FN2. As stated by the State of Florida's Division of Emergency Management:

> While the health implications remain under investigation, it is undisputed that Chinese drywall corrodes copper and other metal surfaces, causing the degradation and nonperformance of wiring, plumbing, appliances and smoke detectors.

*Id.* (Memorandum: Interim Emergency Management Director David Halstead to FEMA Regional Administrator Phillip May Regarding Chinese Drywall March 10, 2010).

Likewise, the Honorable Eldon Fallon, United States District Court Judge for the Eastern District of Louisiana and the presiding judge in the Federal MDL proceeding styled as *In re: Chinese-Manufactured Drywall Products Liability Litigation*, MDL No. 2047, Section L, has characterized 'Chinese drywall' as follows:

> Chinese drywall is different from typical benign drywall for the following reasons: it has a significantly higher average concentration of strontium and more detectable levels of elemental sulfur, and it releases odious sulfur gases which are corrosive to metals, particularly copper and silver.

*See* Findings of Fact and Conclusions of Law, entered by Judge Fallon on or about April 27, 2010, in the case relating to *Hernandez v. Knauf Gips KG, et al.*, case no. 09-6050.

For the avoidance of doubt, the term 'Chinese drywall' shall not include typical, benign drywall (whether manufactured in China or elsewhere) that neither releases odious sulfur gases nor causes corrosion of metals, particularly copper and silver.

*            *            *

*See* Exh. A, FN2.

**Pate's Response:** Disputed to the extent that Plaintiffs imply by their "fact" that Pate, by signing the Trust Distribution Procedures, drafted the Trust Distribution

Procedures or intended any statements contained therein to be adopted as facts in this separate action. Not disputed that the above constitutes an accurate transcription of the cited portion of the Trust Distribution Procedures.

   23. The Findings of Fact and Conclusions of Law, entered by Judge Fallon on April 27, 2010, in *Hernandez v. Knauf Gips KG, et al.*, No. 09-6050, pending in the Multi-District Litigation for Chinese-Manufactured Drywall Products Liability Litigation ("MDL"), which are referenced in the Trust Distribution Procedures (Exh. A, FN 2) and Pate's reply in support of its motion for approval of the Trust Distribution Procedures (Exh. E, FN 2 and p. 3), characterize the defective drywall as having "a significantly higher average concentration of strontium and more detectable levels of elemental sulfur, and it releases odious sulfur gases which are corrosive to metals, particularly copper and silver." *Hernandez* Findings of Fact and Conclusions of Law attached hereto as Exh. B, p. 16.

**Pate's Response:**  Disputed to the extent that Plaintiffs imply by their "fact" that Pate, by "referencing" Judge Fallon's Findings of Fact and Conclusions of Law from *Hernandez v. Knauf Gips KG, et al.*, No. 09-6050 in (1) the Trust Distribution Procedures and (2) in his reply in support of his motion for approval of the Trust Distribution Procedures, intended any statements contained therein to be adopted as facts in this separate action. Not disputed that the above constitutes an accurate transcription of the cited portion of Judge Fallon's Findings of Fact and Conclusions of Law from *Hernandez*.

   24. Additionally, the Findings of Fact and Conclusions of Law entered by Judge Fallon on April 8, 2010 in *Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, No. 09-6687, pending in the MDL, which are referenced in Pate's reply in

support of its motion for approval of the Trust Distribution Procedures (Exh. E, p. 3),[6]

additionally characterize the defective drywall as follows:[7]

> a.   "Chinese drywall has a significantly higher average concentration of strontium and significantly more detectable levels of elemental sulfur gases." See Exh. C, p. 12.

> b.   "Chinese drywall releases sulfur gases. The three main gases that are released from Chinese drywall are hydrogen sulfide (H2S), carbonyl sulfide (COS), and carbon disulfide (CS2). The Chinese drywall also releases elemental sulfur." (internal citations omitted) See Exh. C, p. 12.

---

[6]   Pate and parties asserting claims against Pate also relied on the *Germano* Findings in other bankruptcy court filings. *See, e.g.*, Exh. Q, WCI Chinese Drywall Claimant's Motion to Deem Individual Proofs of Claim to be Timely Filed, at ¶ 6; Exh. R, Motions of Florida WCI Chinese Drywall Plaintiffs for Entry of Orders Allowing Late Filed Claims, at ¶ 6.

**Pate's Response:**   Disputed to the extent that Plaintiffs imply by their "fact" that Pate, by "relying" on Judge Fallon's Findings of Fact and Conclusions of Law from *Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, No. 09-6687 in the above bankruptcy court filings, intended any statements contained therein to be adopted as facts in this separate action.

[7]   Pate's October 7, 2010 reply in support of its motion for approval of the Trust Distribution Procedures states that the Trust Distribution Procedures were developed by the WCI Chinese Drywall Trust "based on the guidance provided by two recent opinions issued in the federal Multidistrict Litigation pending in the United States District Court for the Eastern District of Louisiana and assigned to the Honorable Eldon E. Fallon. *See* Findings of Fact and Conclusions of Law entered by Judge Fallon on or about April 8, 2010, in the case relating to *Germano, et al. v Taishan Gypsum Co, Ltd., et al.*, case no. 09-6687; Findings of Fact and Conclusions of Law entered by Judge Fallon on or about April 27, 2010, in the case relating to *Hernandez v. Knauf Gips KG, et al.*, case no. 09-6050. Those two opinions detailed the harm caused by Chinese Drywall and the necessary remediation protocol." Exh. E, p. 3, citing Exhs. B and C.

**Pate's Response:**   Disputed to the extent that Plaintiffs imply by their "fact" that Pate, by citing to Judge Fallon's Findings of Fact and Conclusions of Law from *Hernandez v. Knauf Gips KG, et al.*, case no. 09-6050 and *Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, No. 09-6687 in his reply in support of his motion for approval of the Trust Distribution Procedures, intended any statements contained therein to be adopted as facts in this separate action.

c.      "The sulfur gases released by Chinese drywall are irritating to the human body.  Exposed individuals reported irritation of the eyes, respiratory system, and skin, among other things." (internal citations omitted) See Exh. C, p. 13.

d.      "The sulfur gases released by Chinese drywall cause offending odors in homes, making them hard if not impossible to live in." See Exh. C, p. 13.

e.      "The sulfur gases released by Chinese drywall are corrosive to metals, particularly copper and silver.  Corrosion is defined by the ASTM [American Society for Testing and Materials] as the chemical or electrochemical reaction between a material, usually a metal, and its environment that produces a deterioration of the materials and its properties.  Copper and silver metal components in the Plaintiffs' houses are extremely vulnerable to corrosion from exposure to the sulfur gases.  The sulfur gases, in reacting with metals, form sulfide deposits on the surfaces of the metals.  For example, a reaction of sulfur gases with copper pipes will form copper sulfide on the metals.  The reaction of sulfur gases with metals can be said to be 'consuming' the useful, pure metals by replacing those metals with sulfides." (internal citations omitted) See Exh. C, pp. 13-14.

f.      "The corrosion on metals caused by the sulfur gases emitted by Chinese drywall causes premature failure of electrical & mechanical devices. . . . Mechanical, electrical, and electronic failures have been shown to have occurred prematurely due to the severe industrial corrosive environments in these Chinese Drywall homes." (internal citations omitted) See Exh. C, pp. 14-15.

g.      "all of the problematic Chinese drywall products share similar chemical and physical properties." See Exh. C, p. 17.

*        *        *

*Germano* Findings of Fact and Conclusions of Law attached hereto as Exh. C.

**Pate's Response:**  Disputed to the extent that Plaintiffs imply by their "fact" that Pate, by "referencing" Judge Fallon's Findings of Fact and Conclusions of Law from *Germano, et al. v. Taishan Gypsum Co., Ltd., et al.*, No. 09-6687 in his reply in support of his motion for approval of the Trust Distribution Procedures, intended any statements contained therein to be adopted as facts in this separate action.

Further disputed on the basis that Plaintiffs misquote Judge Fallon's findings from *Germano*, specifically:  (1) Paragraph "a" should read:  "Chinese drywall has a

significantly higher average concentration of strontium and significantly more detectable levels of elemental sulfur" (not "sulfur gases"); and (2) Paragraph "b" should read: "Chinese drywall releases <u>reduced</u> sulfur gases...."

    25. The WCI Chinese Drywall Trust is a Plaintiff in the Omnibus

Class Action Complaint (I) captioned *Payton, et al. v. Knauf Gips KG, et al.*, No.

2:09-cv-07628, pending in the United States District Court for the Eastern District of

Louisiana (the "*Payton* Action"), which characterizes the defective drywall as follows:

> 2611. In "defective drywall" . . . the gypsum and other components of the product break down and release sulfides and other noxious gases that are then emitted (or "off-gassed") from the drywall.
>
> 2612. Sulfides and other noxious gases, such as those emitted from Defendants' drywall, cause corrosion and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).
>
> 2613. Exposure to sulfide and other noxious gases, such as those emitted from Defendants' drywall, causes personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.
>
>    *  *  *
>
> 2620. As a direct and proximate result of Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from these products, Plaintiffs and the Class Members have been exposed to toxic gases, suffered personal injury, have been placed at an increased risk of disease, and have need for injunctive relief in the form of repair and remediation of their home, of their home contracts, emergency/corrective notice, environmental testing and monitoring, and/or medical monitoring.
>
>    *  *  *

*See* Complaint in *Payton* Action, U.S.D.C. for the E.D. of La., Case No. 2:09-cv-

07628, attached hereto in relevant part as Exh. D.

**Pate's Response:** Not disputed that an entity named the "WCI Chinese Drywall Property Damage and Personal Injury Settlement Trust" is referred to as one of the "Additional Plaintiffs" identified in Exhibit A to the *Payton* Action complaint.  It is further undisputed that the above quote constitutes an accurate transcription from the *Payton* Action complaint.  Disputed that Pate or the WCI Chinese Drywall Trust authored, approved, adopted, or intended any of the statements contained in the Payton *Action* complaint to be adopted as facts in this separate action.

## IV.   THE NATIONAL UNION AND CIIC POLICIES

26.   National Union issued two commercial umbrella liability insurance policies to Beta Drywall LLC and Beta Construction LLC.  The 2006 and 2007 Beta Policies issued by National Union can be found at D.E. 1-1 and 1-2.

**Pate's Response:** Not disputed.

27.   Beta's insurance broker, who assisted Beta in procuring the policies, is located in Florida.  *See* D.E. 1-1 and 1-2 at Declaration Page.

**Pate's Response:** Disputed on the basis that Plaintiffs' citation does not support their "fact."  Further disputed on the basis that discovery is ongoing and information is needed from brokers and National Union regarding any alleged role played by a broker in the procurement of the 2006 and 2007 Beta Policies.

28.   The National Union Polices were delivered to Beta in Florida.  *See* D.E. 1-1 and 1-2 at Declaration Page.

**Pate's Response:** Disputed on the basis that Plaintiffs' citation does not support their "fact."  Plaintiffs' citation does not support its "fact" that the National Union Policies were actually delivered to Beta in Florida, only that Beta's address, as listed, is in Florida.  D.E. 1-1, 1-2 at Declaration Page.  Further disputed on the basis that discovery is ongoing and information is needed from brokers and National Union regarding the delivery of the 2006 and 2007 Beta Policies.

29.   National Union and CIIC respectively issued consecutive commercial umbrella liability policies to Finest Drywall, Inc.  The 2007 and 2008 Finest Policies issued by National Union and CIIC, respectively, can be found at D.E. 1-3 and 1-4.

**Pate's Response:**  Not disputed.

       30.    Finest's insurance broker, who assisted Finest in procuring the

policies, is located in Florida.  *See* D.E. 1-3 and 1-4 at Declaration Page.

**Pate's Response:**  Disputed on the basis that Plaintiffs' citation does not support their "fact."  Further disputed on the basis that discovery is ongoing and information is needed from brokers, National Union, and CIIC regarding any alleged role played by a broker in the procurement of the 2007 and 2008 Finest Policies.

       31.    The National Union Polices [sic] were delivered to Finest in

Florida.  *See* D.E. 1-3 and 1-4 at Declaration Page.

**Pate's Response:**  Disputed on the basis that Plaintiffs' citation does not support their "fact."  Plaintiffs' citation does not support its "fact" that the "National Union Policies" were actually delivered to Finest in Florida, only that Finest's address, as listed, is in Florida.  D.E. 1-3, 1-4 at Declaration Page.  Further disputed on the basis that discovery is ongoing and information is needed from brokers, National Union, and CIIC regarding the delivery of the 2007 and 2008 Finest Policies.

       32.    The 2006 and 2007 Beta Policies and the 2007 Finest Policies

contain an identical Total Pollution Exclusion Endorsement, which provides as

follows:

> This insurance does not apply to:
>
>     1.    Any **Bodily Injury, Property Damage** or **Personal Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere in the world at any time;
>
>     2.    Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or
>
>     3.    Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing,

containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

\* \* \*

*See* D.E. 1-1, 1-2, 1-3.

**Pate's Response:** Not disputed that the above constitutes an accurate transcription of the "Total Pollution Exclusion" endorsement contained in the 2006 Beta Policy, 2007 Beta Policy, and 2007 Finest Policy.

33.   The 2008 Finest Policy contains a materially similar Total Pollution Exclusion Endorsement, which provides as follows:

This insurance does not apply to:

1.   Any **Bodily Injury, Property Damage** or **Personal Injury** and **Advertising Injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere at any time;

2.   Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **Pollutants**; or

3.   Any loss, cost or expense arising out of any claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of **Pollutants**.

\* \* \*

*See* D.E. 1-4.

**Pate's Response:** Not disputed that the above constitutes an accurate transcription of the "Total Pollution Exclusion" endorsement contained in the 2008 Finest Policy.

34.   2006 and 2007 Beta Policies and the 2007 and 2008 Finest Policies define "Pollutants" as "any solid, liquid, gaseous or thermal irritant or

contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." *See* D.E. 1-1, 1-2, 1-3, 1-4.

**Pate's Response:** Not disputed that the above constitutes an accurate transcription of the definition of "Pollutants" in 2006 and 2007 Beta Policies and the 2007 and 2008 Finest Policies.

35.   National Union and CIIC have asserted in their complaint in this action that the Total Pollution Exclusion applies to the underlying Chinese drywall claims. *See* D.E. 1.

**Pate's Response:** Not disputed.

Dated:   August 5, 2011

/s/ Anna M. Piazza
Robert M. Horkovich, Esq.
Anna M. Piazza, Esq.
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY  10020
T:  212-278-1000
F:  212-278-1733
rhorkovich@andersonkill.com
apiazza@andersonkill.com

*Trial counsel for Defendant Robert C.
Pate, as Trustee for the Chinese Drywall
Trust*

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2011, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.

/s/ Anna M. Piazza
Anna M. Piazza