UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA and COMMERCE AND INDUSTRY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>BETA CONSTRUCTION LLC f/k/a BETA DRYWALL LLC; FINEST DRYWALL, INC.; and ROBERT C. PATE, as Trustee for the WCI Chinese Drywall Trust,<br><br>Defendants. | CASE NO.: 8:10-cv-01541-RAL-TBM |

### DEFENDANT ROBERT C. PATE'S MEMORANDUM OF LAW IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendant, Robert C. Pate, as Trustee for the Chinese Drywall Trust ("Pate"), respectfully submits this further opposition to the motion for summary judgment of Plaintiffs National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and Commerce and Industry Insurance Company ("CIIC") (collectively, "Plaintiffs").[1]

### PRELIMINARY STATEMENT

Plaintiffs' motion for summary judgment depends on the application of Florida law. Florida law, however, does not apply to this case. Under the doctrine of *lex loci contractus*, combinations of the following factors have been held relevant to a choice of law determination in an insurance coverage action: (1) from where the binder was delivered; (2) to where the binder was delivered; (3) where the policy was signed;

---

[1] Pate originally filed an opposition to Plaintiffs' motion on August 5, 2011. *See* D.E. 53. Pate incorporates that opposition herein by reference. Where not defined herein, the terms utilized in this brief have the same meaning as in Pate's original opposition.

974067.6

(4) and <u>from</u> where the policy was issued.[2] National Union ignores the case law requiring consideration of three of these factors, focusing exclusively on the location to which the binders were delivered. In the instant case, these operative facts took place mainly in New York, New Jersey, and Georgia. Under the law of any of these states, the total pollution exclusion at issue does not bar coverage.

Even applying Florida law, Plaintiffs have not proven that the total pollution exclusion bars coverage. Plaintiffs have taken no discovery in this action regarding the nature of the underlying claims for which coverage is sought. Plaintiffs instead merely have pieced together the "Drywall Claims" utilizing statements in various pleadings outside this case. While Plaintiffs claim that judicial estoppel renders these statements binding on Pate, they can not – and have not – shown that any court relied on and accepted these alleged prior "positions." There is no judicial estoppel. Plaintiffs have not established that they are entitled to judgment as a matter of law.

Finally, issues of material fact preclude the entry of summary judgment in Plaintiffs' favor. Specifically, issues of material fact exist as to the execution of the insurance policies and the nature of the underlying claims.

For the aforementioned reasons, and those set forth below and in Pate's original opposition, Pate respectfully asks the Court to deny Plaintiffs' motion for summary judgment.

---

[2] *See infra* discussing *CNL Hotels & Resorts, Inc. v. Houston Casualty Co.*, 505 F. Supp. 2d 1317 (M.D. Fla. 2007), *In re Celotex*, 194 B.R. 668 (Bankr. M.D. Fla. 1996), *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1119 (11th Cir. 1990), and *Nat'l Fire & Marine Ins. Co. v. Adoreable Promotions, Inc.*, 451 F. Supp. 2d 1301, 1306 (M.D. Fla. 2006).

## **FACTS**

I. **THE INSURANCE POLICIES**

Four insurance policies are at issue in this case: National Union Policy No. BE 6564380 sold to Beta (the "2006 Beta Policy"); National Union Policy No. BE 6564484 sold to Beta (the "2007 Beta Policy"); National Union, Policy No. BE 5346464 sold to Finest (the "2007 Finest Policy"); and CIIC Policy No. BE 012779651 sold to Finest (the "2008 Finest Policy") (collectively, the "Policies").

A. **The 2006 Beta Policy**

National Union bound coverage for the 2006 Beta Policy in Georgia. Piazza Aff. ¶¶ 2-5; D.E. 58-1, pp. 2-3, 6.[3] Relisha Maxwell – a chartered property and casualty underwriter for AIG in Georgia – issued the binder from Georgia. Piazza Aff. ¶¶ 2-6; D.E. 58-1, p. 2 (showing Relisha Maxwell, who lists a Georgia phone number, emailed the binder on AIG's behalf); see also Ex. 4 to Piazza Aff., p. 2 (showing Relisha Maxwell is a member of the Atlanta Chapter of the Property and Casualty Underwriter Society). Relisha Maxwell signed the binder on behalf of Bethany Haverkamp, who also lists a Georgia phone number under her name. Piazza Aff. ¶ 5; D.E. 58-1, p. 6. Relisha Maxwell emailed the binder to Julie Catalano at Roger Bouchard Insurance Inc., which is located in Florida. Piazza Aff. ¶ 6; D.E. 58-1, p. 2.

---

[3] The page numbers in the docket entry citations refer to the page numbers as identified in the electronic filing header. The "Piazza Aff." refers to the "Affidavit of Anna M. Piazza, Esq. in Further Support of Defendant Robert C. Pate's Opposition to Plaintiffs' Motion for Summary Judgment," which was filed contemporaneously with this memorandum. Pate also incorporates herein by reference and relies on the testimony of Eduardo Robayna set forth in the "Affidavit of Eduardo Robayna in Support of Defendants' Further Opposition to Plaintiffs' Motion for Summary Judgment," which was also filed with this memorandum.

Three National Union insurance company representatives signed the 2006 Beta Policy: Elizabeth M. Tuck (as secretary), John Keogh (as president), and Chris Maleno (as authorized representative). Piazza Aff. ¶ 7; D.E. 1-1, p. 21. All three executives were located in <u>New York</u>, where National Union maintains its principal place of business, at the time of the 2006 Beta Policy's signature. Piazza Aff. ¶¶ 8-11; D.E. 1, ¶ 5; Ex. 1, attached to Piazza Aff. (showing Elizabeth Tuck's corporate headquarters and phone number in New York); Ex. 5 to Piazza Aff. (noting that John Keogh worked for AIG in New York); Ex. 6 to Piazza Aff. (noting that Chris Maleno worked for AIG in New York). National Union issued the 2006 Beta Policy from <u>Georgia</u>. Piazza Aff. ¶ 12; D.E. 1-1, p. 2-3, 5 (showing a Georgia phone number for the underwriter and listing a Georgia address for AIG).

### B. The 2007 Beta Policy

National Union issued the binder for the 2007 Beta Policy from <u>Georgia</u>. Piazza Aff. ¶¶ 14-15; D.E. 58-2, p. 2-3, 6 (email from Sharon Miller at AIG, listing a Georgia phone number, and binder, listing a Georgia address for AIG). Sharon Miller emailed the binder to Julie Catalano at Roger Bouchard Insurance Inc., which is located in Florida. Piazza Aff. ¶ 15; D.E. 58-2, pp. 2-3.

Three National Union representatives signed the 2007 Beta Policy: Elizabeth M. Tuck (as secretary), John Q. Doyle (as president), and Timothy J. McAuliffe (as authorized representative). Piazza Aff. ¶ 16; D.E. 1-2, p. 66. All three executives were located in <u>New York</u>, where National Union maintains its principal place of business, at the time of the 2007 Beta Policy's signature. Piazza Aff. ¶¶ 9, 17-18;

D.E. 1, ¶ 5; Ex. 1 to Piazza Aff. (showing Elizabeth Tuck's corporate headquarters and phone number in New York); Ex. 2 to Piazza Aff. (listing a New York phone number for John Doyle); Ex. 7 to Piazza Aff. (listing a New York address and phone number for Timothy McAuliffe). National Union issued the 2007 Beta Policy from <u>Georgia</u>. Piazza Aff. ¶ 19; D.E. 1-2, p. 2 (showing Georgia address for AIG).

### C. The 2007 Finest Policy

National Union issued the binder for the 2007 Finest Policy from <u>New Jersey</u>. Piazza Aff. ¶ 20; D.E. 58-3, pp. 2-3, 6 (listing a New Jersey phone number for the underwriter and a New Jersey address for AIG Small Business).

The binder for the 2007 Finest Policy is addressed to Barbara Glennon at Florida Home Builders Insurance. Piazza Aff. ¶ 21; D.E. 58-3, p. 3. Plaintiffs have provided no transmittal email or proof of mailing showing delivery of the binder to Ms. Glennon in Florida or elsewhere.[4] Piazza Aff. ¶ 22.

At least two National Union representatives signed the 2007 Finest Policy: Elizabeth M. Tuck (as secretary) and John Q. Doyle (as president). Piazza Aff. ¶ 23; D.E. 1-3, p. 23.[5] Both of these National Union executives were located in <u>New York</u>, where National Union maintains its principal place of business, at the time of the 2007

---

[4] An issue of material fact exists concerning where, if anywhere, the binder for the 2007 Finest Policy was delivered. Pate's discovery requests asked for documents relevant to this question. See D.E. 54-3, Document Request Nos. 33-34 (requesting documents sufficient to identify the locations to which the binders were delivered).

[5] The authorized representative signature block is blank on the copy of the 2007 Finest Policy that the Plaintiffs attached to their complaint. D.E. 1-3, p. 23. Pate's First Set of Interrogatories requested information pertinent to this missing information. See D.E. 54-3, Interrogatory No. 3 (requesting that Plaintiffs identify the name and location of the person(s) who signed the Policies).

Finest Policy's signature. Piazza Aff. ¶ 24; D.E. 1, ¶ 5; Ex. 1 to Piazza Aff. (showing Elizabeth Tuck's corporate headquarters and phone number in New York); Ex. 2 to Piazza Aff. (listing a New York phone number for John Doyle).

National Union issued the 2007 Finest Policy from <u>New Jersey</u>. Piazza Aff. ¶ 25; D.E. 1-3, p. 2-4 (showing New Jersey phone number for underwriter and listing New Jersey address for AIG).

### D.   The 2008 Finest Policy

CIIC issued the binder for the 2008 Finest Policy from <u>New Jersey</u>. Piazza Aff. ¶ 26; D.E. 58-4, pp. 2-3, 6 (listing New Jersey phone number for underwriter and New Jersey address for AIG Small Business).

The 2008 Finest Policy binder is addressed to Barbara Glennon at Florida Home Builders Insurance. Piazza Aff. ¶ 27; D.E. 58-4, p. 3. Plaintiffs have not provided any transmittal email or any proof of mailing showing delivery of the binder to Ms. Glennon in Florida or elsewhere.[6]  Piazza Aff. ¶ 28.

Two CIIC insurance company representatives signed the 2008 Finest Policy: Elizabeth M. Tuck (as secretary) and Joseph L. Boren (as president). Piazza Aff. ¶ 29; D.E. 1-4, p. 35. Both of these representatives were in <u>New York</u>, where CIIC maintains its principal place of business, at the time of the 2008 Finest Policy's signature. Piazza Aff. ¶ 30; D.E. 1, ¶ 6; Ex. 1 to Piazza Aff. (showing Elizabeth Tuck's

---

[6] An issue of material fact exists concerning where, if anywhere, the binder for the 2008 Finest Policy was delivered. Pate's discovery requests asked for documents relevant to this question. See D.E. 54-3, Document Request Nos. 33-34 (requesting documents sufficient to identify the locations to which the binders were delivered).

corporate headquarters and phone number in New York); Ex. 3 to Piazza Aff. (listing a New York address and phone number for Joseph Boren). CIIC issued the 2008 Finest Policy from <u>New Jersey</u>. Piazza Aff. ¶ 31; D.E. 1-4, p. 2-4 (showing a New Jersey phone number for the underwriter and listing a New Jersey address for AIG).

### E. Summary Of Operative Facts

In chart format, the operative facts regarding the Policies' execution are as follows:

| Policy | Place from which binder was issued | Place to which binder was delivered | Place where policy was signed | Place from which policy was issued |
|---|---|---|---|---|
| 2006 Beta Policy | GA | FL | NY | GA |
| 2007 Beta Policy | GA | FL | NY | GA |
| 2007 Finest Policy | NJ | Unknown | NY | NJ |
| 2008 Finest Policy | NJ | Unknown | NY | NJ |

The Plaintiffs have not provided this Court with a record to the contrary.

## ARGUMENT

### I. NEW YORK, NEW JERSEY, AND/OR GEORGIA SUBSTANTIVE LAW APPLIES TO THIS CASE

At this stage of the briefing, it is undisputed that the doctrine of *lex loci contractus* controls the choice of law determination in this insurance coverage action. *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163-64 (Fla. 2006).[7] Under

---

[7] Plaintiffs originally suggested that the significant relationship test might apply, but they since have abandoned that position, which they incorrectly advocated to this Court. D.E. 47, p. 3 (where Plaintiffs incorrectly argued that the place of injury is relevant to the Court's choice of law determination).

974067.6

*lex loci contractus*, "the law of the jurisdiction where the [insurance] contract was <u>executed</u> governs the rights and liabilities of the parties in determining an issue of insurance coverage." *Valiant Ins. Co. v. Progressive Plumbing, Inc.*, No. 5:06-cv-410-Oc-10GRJ, 2007 WL 2936241, at *2 (M.D. Fla. Oct. 9, 2007) (emphasis in original); *see also In re Celotex Corp.*, 194 B.R. 668, 672 (Bankr. M.D. Fla. 1996) (noting that "[t]he court applies the last act test to decide where the contract was completed and, thus, which state's law would apply"). "The determination of where a contract was executed is fact-intensive, and requires a determination of where the last act necessary to complete the contract was done." *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1092-93 (11th Cir. 2004) (internal quotations omitted); *Jemco, Inc. v. United Parcel Serv., Inc.*, 400 So. 2d 499, 500 (Fla. Dist. Ct. App. 1981).

In determining when the last act necessary to execute an insurance policy took place, "Florida's application of lex loci contractus analysis has not developed in any easily discernable, straight line fashion." *In re Celotex Corp.*, 194 B.R. at 671. Indeed, the Florida Supreme Court has not squarely addressed this issue, and federal courts grappling with the question have reached inconsistent results.[8]

---

[8] Indicative of the current flux in *lex loci contractus*' application, the Eleventh Circuit recently certified the following question to the Florida Supreme Court:

> Does the doctrine of lex loci contractus apply to a dispute about coverage that involves a policy for comprehensive general liability insurance, made outside of Florida, that insures the operations of a contractor on a project located in Florida?

*U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1035 (11th Cir. 2008). The parties stipulated to a dismissal of the appeal, and therefore, the Florida Supreme Court did not rule on this issue. *American Home Assurance Co. v. Peninsula Developers, Inc.*, Case No. 09-23691 (S.D. Fla. Oct. 19, 2010), D.E. 58-5.

974067.6

### A. Based On The Issuance Of The Binders, New Jersey And/Or Georgia Substantive Law Apply

The last act necessary to complete the Policies constitutes the issuance of the binders, which took place in New Jersey and Georgia. The place of the contract is "where the last act necessary to complete the contract is performed." *Valiant Ins.*, 2007 WL 2936241, at *2. "The last act necessary to complete a contract is the offeree's communication of acceptance to the offeror." *Buell v. State*, 704 So. 2d 552, 555 (Fla. Dist. Ct. App. 1997).

Here, National Union and CIIC accepted the policyholders' offers to purchase insurance by issuing the binders. National Union and CIIC issued the 2007 and 2008 Finest Policies from New Jersey, and National Union issued the 2006 and 2007 Beta Policies from Georgia. Accordingly, New Jersey and/or Georgia law should apply to this Court's interpretation of the Policies.[9]

### B. Consideration Of All *Lex Loci Contractus* Factors Requires Application Of New Jersey, New York, and/or Georgia Law

Nearly all of the cases applying Florida's *lex loci contractus* doctrine base their decision on some cluster of events that could constitute the last act necessary to complete the contract. *See, e.g., CNL Hotels & Resorts, Inc. v. Houston Casualty Co.*, 505 F. Supp. 2d 1317, 1318-21 (M.D. Fla. 2007) (place from which the binder was issued and place where insurance company signed the policy were operative events for purposes of *lex loci contractus*), aff'd in part sub nom. *CNL Hotels & Resorts, Inc. v.*

---

[9] The Court need not choose among New York and Georgia law to the extent that it determines that no conflict of law exists among their interpretation of the pollution exclusion. Neither of those states' law precludes coverage for claims like these due to the pollution exclusion.

*Twin City Fire Ins. Co.*, 291 F. App'x 220 (11th Cir. 2008); *Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1119 (11th Cir. 1990) (stating in dicta that, under Florida choice of law principles, the substantive law of the state where the policy was issued and countersigned applies); *Nat'l Fire & Marine Ins. Co. v. Adoreable Promotions, Inc.*, 451 F. Supp. 2d 1301, 1306 (M.D. Fla. 2006) (holding that, under the doctrine of *lex loci contractus*, Michigan law governed interpretation of an insurance policy that was issued and countersigned in Michigan).

Courts also have held that the places of delivery and countersignature of the policy do not control for purposes of *lex loci contractus*. *See CNL Hotels & Resorts, Inc.*, 505 F. Supp. 2d at 1321 (stating that "the important factor is the place of execution of the contract, not the place or places to which it was (eventually) mailed."); *In re Celotex Corp.*, 194 B.R. at 674 (holding that delivery and countersignature of the policy do not constitute the last act necessary to complete the contract under the *lex loci contractus* doctrine).

In this case, analysis of all of the potential last acts to complete the contract favors the application of New York, New Jersey, or Georgia law to the Policies. *See* summary chart, *supra* at 7. Only one of four potential last acts occurred outside New York, New Jersey, and Georgia. *Id.* As New York, New Jersey, and Georgia law would not apply the total pollution exclusion to a Chinese Drywall claim, it matters not which of those states' law applies.

974067.6

### C. Plaintiffs Have Not Established That Florida Law Applies

While Plaintiffs originally argued that the place to which the insurance policies were delivered controlled for purposes of *lex loci contractus*, Plaintiffs switched the position Plaintiffs advocated to this Court, asserting for the first time in their reply brief that the place to which the binders were delivered governs. *Compare* D.E. 47, 3 (arguing that Florida substantive law applies because the policies were delivered to Beta and Finest in Florida) *with* D.E. 58, p.7-8 (arguing that Florida law applies because the binders were allegedly delivered to Florida).[10]

Plaintiffs rely on three federal district court cases for the proposition that the binder's place of delivery alone controls under the doctrine of *lex loci contractus*: *CNL Hotels & Resorts, Inc.*, 505 F. Supp. 2d at 1317; *American Home Assurance Co. v. Peninsula II Developers, Inc.*, Case No. 09-23691 (S.D. Fla. August 15, 2011); and *In re Celotex Corp.*, 194 B.R. at 668. Plaintiffs misstate the holdings of the first two cases and improperly rely on the third.

In *CNL Hotels & Resorts, Inc.*, the court based its holding on the location <u>from which</u> the binders were delivered, not <u>to which</u> the binders were delivered. *CNL Hotels & Resorts, Inc.*, 505 F. Supp. 2d at 1321. Specifically, in holding that New York law applied, the court relied on a CNL officer's testimony that:

> it was his understanding that coverage under the ... [p]olicy took effect when Crystal <u>issued</u> a binder. Crystal issued the binder <u>from</u> its office in New York.

---

[10] Indeed, the policy's delivery does not constitute the last act necessary to complete the contract. *See supra* at 10.

- 11 -

974067.6

*Id.* (emphasis added). Indeed, in the instant case, *CNL Hotel & Resorts, Inc.* supports application of New Jersey and Georgia law – the law of the states <u>from which</u> the binders were issued.

Plaintiffs also misstate the holding of *American Home Assurance Co. v. Peninsula II Developers, Inc.*, Case No. 09-23691 (S.D. Fla. August 15, 2011), D.E. 58-5. In that case, the court noted that:

> Authorities applying the lex loci rule, including Florida authorities, conflict as to whether the last act necessary to execute an insurance policy is either (1) the place where an acceptance (or a binder) is received, or (2) the place from which the acceptance (or a binder) is sent.

*Id.* at pp. 15-16. The court then explicitly refused to choose between the two, stating:

> However, in this case, the Court need not choose between the two approaches because neither would permit the application of Florida law, and California law must apply. … [B]ecause the policies were executed in the exchange between American Home's agent in New York and Peninsula II's agent in California, the last act could not have occurred in Florida.

*Id.* at p. 17. Reinforcing that it had not chosen between the two options, the court went on to demonstrate that under either the "binder received" or "acceptance made" approaches, the result would be the same. *Id.* at pp. 17-18. Here, it would not.

Finally, *In re Celotex Corp.* is limited to the facts before that court. Indeed, the court stated: "[t]he issue addressed at this time is how to apply the lex loci contractus analysis <u>to the facts of this case</u>." 194 B.R. at 671 (emphasis added). In applying Illinois law, the court relied heavily on the fact that "[t]he negotiating, the contracting, the offers, the acceptances, the binders, the claims, and all other related transactions" involved interaction with a broker in Illinois. *Id.* at 673. *In re Celotex* did

not establish, as Plaintiffs would have it, a bright line test to be applied to all cases, regardless of any other potential "last acts" existent in the particular factual scenario before the court.

Even assuming, arguendo, that the location to which the binders are delivered alone controls for purposes of determining choice of law under *lex loci contractus*, Plaintiffs have not established that the binders for the 2007 and 2008 Finest Policies were delivered to Florida. They provide no proof of delivery. These issues of material fact preclude the entry of summary judgment even under the Plaintiffs' theory.

## II. THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

An insurance company bears "the burden of establishing that the loss was sustained in a fashion for which coverage was excluded." *Hollywood Flying Servs., Inc. v. Compass Ins. Co.*, 597 F.2d 507, 508 (11th Cir. 1979). Moreover, "'[w]hen an ... [insurance company] relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast <u>solely and entirely</u> within the policy exclusion and are subject to <u>no other reasonable interpretation</u>.'" *Castillo v. State Farm Florida Ins. Co.*, 971 So. 2d 820, 824 (Fla. Dist. Ct. App. 2007) (emphasis added).

### A. Plaintiffs' Have Failed To Demonstrate That They Are Entitled To Judgment As A Matter Of Law

    1. *Under New York, New Jersey, And/Or Georgia Law, The Total Pollution Exclusion Does Not Apply To Bar Coverage*

The Policies' total pollution exclusions do not bar coverage under New York, New Jersey, or Georgia law. *See Belt Painting Corp. v. TIG Ins. Co.*, 795 N.E.2d 15 (N.Y. 2003) (holding under New York law that the total pollution exclusion was

ambiguous and did not apply to injuries arising from indoor exposure to fumes that drifted a short distance from their intended use to cause inhalation injuries); *Tower Ins. Co. of N.Y. v. Breyter*, 830 N.Y.S. 2d 122 (App. Div. 2007) (holding that pollution exclusion did not bar coverage for injuries caused from inhalation of fumes from nail salon); *Nav-Its, Inc. v. Selective Ins. Co. of Am.*, 869 A.2d 929 (N.J. 2005) (holding that the insurance company's interpretation of the pollution exclusion was "overly broad" and "unfair" and did not apply to inhalation of floor sealant fumes but only to instances of traditional environmental pollution); *Baughman v. U.S. Liab. Ins. Co.*, 662 F. Supp. 2d 386 (D.N.J. 2009) (holding that the pollution exclusion did not preclude coverage for injuries at a daycare facility due to mercury contamination); *Bituminous Cas. Corp. v. Advanced Adhesive Tech., Inc.*, 73 F.3d 335, 338-39 (11th Cir. 1996) (under Georgia law, pollution exclusions were ambiguous as applied to fumes from the policyholder's adhesive, were meant to apply to environmental contamination, and did not apply to deny coverage); *Kerr-McGee Corp. v. Georgia Cas. & Sur. Co.*, 568 S.E.2d 484, 489 (Ga. Ct. App. 2002) (holding that ambiguous total pollution exclusion provision did not apply to release of chemical within plant that injured an employee when, inter alia, "no environmental contamination occurred or was threatened"). Plaintiffs have not demonstrated that they are entitled to judgment as a matter of law where the applicable substantive law does not bar coverage under the total pollution exclusion at issue.

        2.     *Plaintiffs Rely On Irrelevant Pleadings To Establish That The "Drywall Claims" Fall Within The Total Pollution Exclusion*

Plaintiffs must establish that "the allegations in the complaint could <u>under no circumstances</u> lead to a result which would trigger the duty to indemnify." *Northland*

*Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001). Here, Plaintiffs have made no such showing. Plaintiffs have failed to provide this Court with a record permitting summary judgment.

Having taken no discovery regarding what Plaintiffs term the "Drywall Claims," Plaintiffs rely on various pleadings that have no bearing on this case. In their second round of briefing, Plaintiffs assert for the first time that the doctrine of judicial estoppel renders these statements binding on Pate.

The doctrine of judicial estoppel is inapplicable here. For the doctrine of judicial estoppel to apply, Plaintiffs must demonstrate that: (1) "the allegedly inconsistent positions were made under oath in a prior proceeding"; (2) "the inconsistencies must have been calculated to make a mockery of the judicial system"; (3) that the party's later position is clearly inconsistent with its earlier position; (4) "the party succeeded in persuading a court to accept the party's earlier position so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (5) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1335 (11th Cir. 2005) (emphasis added). Additionally, the alleged inconsistent statements must be made within the context of the same case, involving the same parties. *Id.* at 1336 n. 8; *In re Justo*, No. 09-1460-BKC-AJC, 2010 WL 5018353, at *4 (Bankr. S.D. Fla. Dec. 3, 2010). Plaintiffs have not – and cannot – make such a showing here.

### B. Substantial Issues Of Material Fact Preclude Summary Judgment

Substantial issues of material fact preclude the entry of summary judgment in this case. Plaintiffs' motion for summary judgment depends on a Florida choice of law determination. The following issues of material fact apply to that analysis: (1) where, if anywhere, were the binders for the 2007 and 2008 Finest Policies delivered; and (2) who, if anyone, signed the authorized representative signature block in the 2007 Finest Policy, and where did they do so.

Furthermore, having improperly relied on inapplicable statements that are not binding on Pate to describe the "Drywall Claims," the following issues of material fact persist concerning the nature of the "Drywall Claims": (1) what gases, if any, did the Chinese drywall at issue in this case allegedly emit; (2) how are those gases emitted; (3) does the drywall cause irritation or contamination; (4) what physical effects does the drywall have on the individuals exposed to it; (5) what physical effects does the drywall have on the property exposed to it; and (6) what is the chemical composition of the defective drywall. Pate respectfully requests that summary judgment be denied as Plaintiffs have not shown that no issue of material fact exists as to the aforementioned issues.

974067.6

## CONCLUSION

For the foregoing reasons, Pate respectfully requests that this Court deny Plaintiffs' motion for summary judgment.

Dated: August 31, 2011

/s/ Anna M. Piazza
Robert M. Horkovich, Esq.
Anna M. Piazza, Esq.
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
T: 212-278-1000
F: 212-278-1733
rhorkovich@andersonkill.com
apiazza@andersonkill.com

*Trial counsel for Defendant Robert C. Pate, as Trustee for the Chinese Drywall Trust*

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2011, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.

/s/ Anna M. Piazza
Anna M. Piazza

- 17 -

974067.6