UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, and
COMMERCE AND INDUSTRY INSURANCE
COMPANY,

    Plaintiffs,

v.                                                          CASE NO: 8:10-cv-1541-T-26TBM

BETA CONSTRUCTION LLC f/k/a Beta
Drywall LLC, FINEST DRYWALL, INC., and
ROBERT C. PATE, as Trustee for the WCI
Chinese Drywall Trust,

    Defendants.
_____/

**O R D E R**

Before the Court is Plaintiffs' Motion for Summary Judgment and Uncontested Statement of Facts (Dkt. 47), Defendant Robert C. Pate's Memorandum of Law in Further Opposition and the supporting affidavits of Eduardo Robayna and Anna M. Piazza with attachments (Dkts. 64, 65 & 66), and Defendant Finest Drywall, Inc.'s Response and Notice of Joinder to Pate's submissions. (Dkts. 67 & 68). After careful consideration of the motion and the submissions of the parties, and reconsideration of the prior history of this case, the Court is of the opinion that it should refrain from resolving the issues raised

until further development of the record in this particular case. Accordingly, the motion should be denied as premature.

## BACKGROUND

In this action filed over one year ago, Plaintiffs, as the commercial liability insurers of drywall subcontractors Defendants Beta Construction LLC f/k/a Beta Drywall LLC (Beta) and Finest Drywall, Inc. (Finest), seek a declaration that they owe no duty to defend or to indemnify them with respect to the allegedly defective Chinese-manufactured drywall installed in homes in Florida constructed by the homebuilder WCI Communities, Inc. (WCI). Beta and Finest are the subcontractors who installed the defective drywall in the homes built by WCI located in Florida. Defendant Robert C. Pate was appointed in 2009 as bankruptcy trustee of the WCI Chinese Drywall Trust to assume WCI's liability or losses for claims, and to obtain insurance proceeds to settle the claims made against WCI for the defective Chinese drywall.

Plaintiffs bring this action asking the Court to declare that no duty to defend or indemnify exists under the facts of the case and pursuant to the four commercial umbrella liability policies at issue. Two policies were issued to Beta covering one-year periods, one in 2006 and the other in 2007, and two policies were issued to Finest covering one-year periods in 2007 and 2008. The claims stem from alleged bodily and property injury arising out of alleged exposure to the defective drywall, presumably from the emission of gases and substances from the drywall.

According to the parties, no discovery has been conducted, or at least answered, in this action on either side.  Almost to the day, one year after this action was filed, Plaintiffs filed this motion for summary judgment.  Plaintiffs request a summary judgment not on the duty to *defend*, but on the duty to *indemnify*, including 1) a resolution of the choice-of-law issues regarding which state's substantive law will apply to determine whether the "Total Pollution Exclusion" clause in the policy excludes coverage under the facts of this case, and 2) a declaration that, under the applicable law, the policy exclusion is unambiguous, thereby barring coverage.  Although this Court endeavored to take this motion under advisement based on the record at hand, the application of the rather perplexing state of the choice-of-law principles in Florida to the incomplete factual basis pertaining to the particular steps taken and required in the procurement and finalization of the four insurance policies, leaves no other option than to revisit this issue after the facts of this case have been fully developed after discovery.

## APPLICABLE LAW

In diversity of citizenship cases like the present case, a federal district court applies the choice-of-law principles of the forum state, in this case, Florida.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).  In this Court's order of August 16, 2011, it noted that the parties had agreed that Florida applies the *lex loci contractus* choice-of-law doctrine in contract cases such as this one.  (Dkt. 61).  This

statement, however, is not exactly accurate, given the constant flux in the state of the law as articulated in U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp., 550 F.3d 1031 (11th Cir. 2008). In that case, the Eleventh Circuit recognized the decision of State Farm Mutual Automobile Insurance Co. v. Roach, 945 So.2d 1160, 1163-64 (Fla. 2006), in which the Florida Supreme Court enunciated that it "had never retreated from our adherence to [the rule of *lex loci contractus*] in determining which state's law applies in interpreting contracts." U.S. Fid. & Guar., 550 F.3d at 1034 (quoting Roach, 945 So.3d at 1164). Noting its prior decisions of Shapiro v. Associated International Insurance Co., 118 F.3d 1511 (11th Cir. 1990) and LaFarge Corp. v. Travelers Indemnity Co., 899 F.2d 1116 (11th Cir. 1997), the Eleventh Circuit certified the following question to the Florida Supreme Court:

> Does the doctrine of *lex loci contractus* apply to a dispute about coverage that involves a policy for comprehensive general liability insurance, made outside of Florida, that insures the operations of a contractor on a project located in Florida?

U.S. Fid. & Guar., 550 F.3d at 1035.[1] The certified question was withdrawn, however, when the parties in that case stipulated to dismiss the appeal. See Eleventh Circuit Court of Appeals Case No. 08-10544-JJ; Scratch Golf, LLC v. Lexington Ins. Co., No. 08-60815-CIV, 2009 WL 1287963, *3 (S.D. Fla. May 6, 2009). When courts have been

---

[1] Prior to the question being certified, various courts, including the Eleventh Circuit, had commented on and interpreted Shapiro, both before and after Roach. In a pre-Roach unpublished opinion, the Eleventh Circuit noted that "the Florida courts ha[d not] given a clear indication that this court's decision in LaFarge [Corp. v. Traveler's Indem. Co., 118 F.3d 1511 (11th Cir. 1997)] and Shapiro were wrong."). Great Amer. E&S Ins. Co. v. Sadiki, 170 Fed.Appx. 632, *2 (Mar. 3, 2006) (unpublished). In one pre-Roach order, a bankruptcy judge noted that the Shapiro court "expressly acknowledges [the rule governing choice of law for contracts] is *lex loci contractus*." In re Celotex, 194 B. R. 668, 672 n. 4 (M.D. Bankr. 1996). In another pre-Roach order, a court described Shapiro as recognizing an exception to the *lex loci* doctrine where the insured risk is located within the state. National Fire & Marine Ins. Co. v. Adoreable Promotions, Inc., 451 F.Supp.2d 1301 (M.D. Fla. 2006). Some courts have suggested, post-Roach, that the Eleventh Circuit may soon be retreating from its prior decisions of Shapiro and LaFarge. See Scratch Golf, LLC v. Lexington Ins. Co., 2009 WL 1287963, *3 (S.D. Fla. May 6, 2009) (stating that "Eleventh Circuit may be positioned to someday soon reverse itself on [choice-of-law] question."), aff'd by 2009 WL 4377556 (11th Cir. Dec. 3, 2009) (unpublished) (refraining from deciding choice-of-law question concerning Shapiro and Roach); Valiant Ins. Co. v. Progressive Plumbing, Inc., 2007 WL 2936241, *4 (M.D. Fla. Oct. 9, 2007) (referring to Shapiro and Roach, "where current state law is clearly contrary to rulings of the Eleventh Circuit interpreting and applying state law, this Court is justified—if not required— to take the fully developed, current state law in preference to the earlier, out-dated law of the Circuit."); CNL Hotels & Resorts, Inc. v. Houston Cas. Co., 505 F.Supp.2d 1317, 1320 n. 4 (M.D. Fla. 2007) (stating that the "Shapiro court was making an educated guess that Florida was in the process of abandoning the 'antiquated' doctrine of *lex loci contractus* in favor of the approach advocated by the Restatement (Second) of [Conflicts]" and "Florida's choice of law rules have yet to follow the path [the Shapiro court] predicted."); U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp., 2007 WL 3024345 (M.D. Fla. Oct. 15, 2007) (noting Shapiro and LaFarge's reaffirmance in Sadiki, but doubting that Shapiro and progeny remain good law after Roach), certifying question on appeal in 550 F.3d.1031 (11th Cir. 2008).

faced with a choice-of-laws decision since Roach, they have assumed Shapiro's acknowledgment that Florida has always followed the choice-of-law doctrine of *lex loci contractus* in contract cases.  See Bedoya v. Travelers Property Cas. Co. of Amer., 773 F.Supp.2d 1326, 1329 (M.D. Fla. 2011) (citing Shapiro for the proposition that Florida courts apply *lex loci contractus* to determine which state law applies); CAE USA, Inc. v. XL Ins. Co., 2011 WL 1878160 (M.D. Fla. May 17, 2011) (citing Shapiro and Roach and stating that Florida applies the rule of *lex loci contractus* when determining choice of law in contract cases); Valiant Ins. Co. v. Progressive Plumbing, Inc., 2007 WL 2936241, *2 (M.D. Fla. Oct. 9, 2007) (stating that Shapiro recognized Florida follows law of *lex loci contractus* when considering insurance contracts, but decided Florida would follow the Restatement (Second) of Conflicts of Law on its facts).  The Florida Supreme Court has removed any doubt, however, of its application of the *lex loci contractus* rule to contracts, including the narrow exception for public policy.  Roach, 945 So.2d at 1163 & 1164.

Having determined that Florida unequivocally follows the rule of *lex loci contractus* in deciding which state law to apply to interpret insurance contracts, this Court must decipher how to apply the doctrine to the facts of any given case.  The rule provides "that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage."  Roach, 945 So.2d

at 1163. Determining where the contract "was executed" or completed[2] proves to be difficult in this case on this record.

The case law seems to provide several different factors that can be considered to ascertain where the contract was executed or where the last act necessary for completion occurred. For example, courts have relied on where the insurance policy was delivered to determine choice of law. See, e.g., CAE USA, Inc., 2011 WL 1878160, * 2 (holding that Canadian law applied because insurance policy was "delivered in Canada"). Some courts have held that the facts of where the policy is issued for delivery and actually delivered are not relevant to the precise issue of where the policy was executed. See, e.g., CNL Hotels, 505 F.Supp.2d at 1320; In re Celotex, 194 B.R. at 674. In CNL Hotels, testimony was taken of the CNL officers to establish the broker relationships, the facts surrounding the issuance of binders and policies,[3] and who signed the policy in what location. There, it did not matter whether the issuance of the binder or the policy was the last step necessary to complete the contract, because both of those events happened in the same place.

---

[2] The test has been referred to determining "the place where the last act necessary to complete the contract was done." In re Celotex, 194 B.R. at 672, citing cases. "Where the last act necessary to complete the contract is performed, that is the place of the contract." Colhoun v. Greyhound Lines, Inc., 265 So.2d 18, 21 (Fla. 1972).

[3] At least one bankruptcy court has noted that the "[r]ecognition of the binder as the last act necessary to complete a contract for coverage is consistent with the concept of binders in insurance law." In re Celotex, 194 B.R. at 673 n. 5 (citations omitted).

Other cases discuss where the policy was issued and countersigned by the insurer. See, e.g., Adoreable Promotions, Inc., 451 F.Supp.2d at 1306. One court declares that the only place for the last step for completion of an insurance contract is the location of the delivery of the binder. In re Celotex, 194 B.R. at 673. In that case, however, the facts were fully developed. Based on the record as it stands this date and the many different factors that may be considered in determining where the contract was executed or completed, denial of the motion as premature would permit the record to be more fully developed for resolution of the issue of what state law applies to each of the four policies.

## DUTY TO INDEMNIFY

Even assuming Florida law applies to interpret the effect of the exclusion clause at issue in the four policies, notably, Plaintiffs seek summary judgment on the issue of indemnification, not the duty to defend, which remains a significant distinction. In Florida, to determine whether a duty to defend exists, reliance on the allegations of the complaint are sufficient. Colony Ins. Co. v. Suncoast Med. Clinic, LLC, 726 F.Supp.2d 1369, 1378 (M.D. Fla. 2010) (citing Estate of Tinervin v. Nationwide Mut. Ins. Co., 23 So.3d 1232, 1238 (Fla.Dist.Ct.App. 2009) and Lawyers Title Ins. Corp. v. JDC (Am.) Corp., 52 F.3d 1575, 1580 (11th Cir. 1995), which hold that the duty to defend exists if the complaint alleges facts, even if untrue, that bring the case within policy). The duty to defend is much broader that the duty to indemnify. The actual coverage, or indemnification issue, however, cannot be resolved until the outcome of the case, whether

by a trial to ascertain all of the facts or by a settlement, which inherently considers all the facts. Northland Cas. Co. v. HBE Corp., 160 F.Supp.2d 1348, 1360 (M.D. Fla. 2001). The only possible exception to this rule is if "the allegations in the complaint could under no circumstances lead to a result which would trigger the duty to indemnify." Northland, 160 F.Supp.2d at 1360.

Plaintiffs have not shown that the exception applies. More importantly, genuine issues of fact exist as to the claims in this case. For example, Finest contends that there have been no claims filed against it with regard to the particular two policies issued to them in this case. Plaintiffs also inform this Court that the deadline for submitting claims to the WCI Chinese Drywall Trust was May 10, 2011. After carefully reviewing the record, the Court finds that the facts must be further developed before a prudent decision can be made on this motion. Consequently, summary judgment is denied.

It is therefore **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Summary Judgment (Dkt. 47) is **DENIED** as premature.

**DONE AND ORDERED** at Tampa, Florida, on September 13, 2011.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

COPIES FURNISHED TO:
Counsel of Record