## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA and COMMERCE AND INDUSTRY INSURANCE CO.; | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 8:10-cv-01541-RAL-TBM |
| v. | ) ) | |
| BETA CONSTRUCTION LLC f/k/a BETA DRYWALL LLC; FINEST DRYWALL, INC.; and ROBERT C. PATE, as Trustee for the WCI Chinese Drywall Trust; | ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' MOTION FOR PROTECTIVE ORDER AND REQUEST FOR STAY PRECLUDING ANSWERS TO PORTIONS OF ROBERT C. PATE'S FIRST AND SECOND SETS OF INTERROGATORIES AND FIRST REQUESTS FOR PRODUCTION

Plaintiffs National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and Commerce and Industry Insurance Company ("CIIC"), pursuant to Federal Rule of Civil Procedure 26(c) and Local Rule 3.01(g), hereby file their Motion for Protective Order Precluding Answers to certain portions of the First Set of Interrogatories, Second Set of Interrogatories, and First Request for Production (collectively, "discovery") served by Defendant Robert C. Pate ("Pate"), and state as follows:

## I.      INTRODUCTION

On September 13, 2011, this Court ruled that applicable "Florida [law] unequivocally follows the rule of *lex loci contractus* in deciding which state law to apply to interpret insurance contracts," and thus that "the law of the jurisdiction *where the contract was executed* governs the rights and liabilities of the parties in determining an issue of insurance coverage." Dkt. 69 at 6 (emphasis added; citations omitted). Upon review of the record in this case, "the Court

concluded that denying Plaintiffs' motion for summary judgment as premature would permit the record to be more fully developed for resolution of the issue of what state law applies to each of the four policies" at issue in this case.  *Id.* at 8.  The Court's order indicates[1] that the Court should determine which state's law applies to the substantive coverage issues in this case prior to determination of any other issues.

After entry of the Court's September 13 order, Pate propounded over 50 discovery requests on Plaintiffs, which are attached hereto as Exhibit A, the bulk of which seek information and documentation irrelevant to choice of law.  Plaintiffs therefore move the Court for a protective order precluding discovery directed to facts and issues unrelated to determining choice of law under the rule of *lex loci contractus*, and a stay of all discovery purportedly directed to the substantive coverage issues in this case, until after the Court rules with respect to which state's substantive law is applicable.  Discovery with respect to the substantive coverage issues would be premature as facts relevant to interpretation and application of the policy provisions at issue may differ depending on which state's law is applied by the Court.

Furthermore, even to the extent the Court refuses to grant a stay of discovery unrelated to choice of law, Pate's discovery otherwise seeks information and documentation that is irrelevant to the substantive issue of insurance contract interpretation that forms the basis of this dispute.  Because these extraneous discovery requests are not calculated to lead to the discovery of admissible evidence, Plaintiffs respectfully request that this Court enter a Protective Order precluding Pate's irrelevant discovery, as set forth below.

---

[1] Plaintiffs believe that the record establishes that Florida law applies under the *lex loci contractus* test adhered to by Florida courts.  Nonetheless, in light of the Court's ruling that the record should be more fully developed with respect to factors impacting choice of law, Plaintiffs believe that choice of law is a threshold issue that should be decided prior to determination of the substantive coverage issues in this case.

## II.   __BACKGROUND__

Plaintiffs filed a Complaint for Declaratory Judgment on July 13, 2010 seeking a judicial determination that they have no duty to defend or indemnify Defendants under the four policies of insurance identified therein (the "Policies") for claims and lawsuits related to allegedly defective drywall installed in homes located in Florida (the "Drywall Claims").  (Dkt. 1.)  On July 15, 2011, Plaintiffs moved for summary judgment on grounds that the Drywall Claims are excluded by the clear and unambiguous terms of certain Total Pollution Exclusions in the Policies under the applicable law of Florida.  (Dkt. 47.)

On August 5, 2011, Defendants responded to Plaintiffs' Motion for Summary Judgment by arguing that a determination on the merits of the motion would be premature because the law of New York, Pennsylvania, or New Jersey might govern the Policies.  (Dkt. 53 at 14.)  On September 13, 2011, this Court issued an Order denying Plaintiffs' Motion for Summary Judgment as premature because the record requires additional development on "the issue of what state law applies to each of the four policies."  (Dkt. 69 at 8.)  The Court further stated that the choice of law issue is to be determined under the doctrine of *lex loci contractus*, under which a policy of insurance is governed by the law of the jurisdiction where the contract was executed. (*Id*. at 6.)  In accordance with the scope of the *lex loci contractus* inquiry, the Order specified that development of the record was necessary for Pate[2] only as to the "factual basis pertaining to the particular steps taken and required in the procurement and finalization of the four insurance policies."  (*Id*. at 3.)

---

[2] Discovery on a second issue identified by the Court – the nature of the claims against Defendants – involves information that is in the sole possession of Defendants and, in accordance with the Court's Order, Plaintiffs will be propounding discovery on Defendants regarding this issue.  Consequently, discovery regarding the nature of the claims against Defendants is not relevant for purposes of determining the proper scope of discovery to be propounded by Pate.

Although the procurement and finalization of the Policies is the only relevant issue of fact identified in the Court's Order, Pate has nonetheless propounded irrelevant and overbroad discovery on a wide range of topics having nothing to do with this or any other issue before the Court.  These discovery requests include: (1) the drafting of the Policies and binders; (2) the underwriting of the Policies; (3) Plaintiffs' claim handling practices; and (4) Plaintiffs' submissions before regulatory or governmental agencies.

### III.   MEMORANDUM OF LAW

Under Federal Rule of Civil Procedure 26(c)(1), this Court may issue a protective order to limit discovery "for good cause shown … to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  *Wrangen v. Pa. Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1277 (S.D. Fla. 2008).  Discovery which has no possible relevance to the subject matter before the court should not be allowed.  *Milinazzo v. State Farm Ins. Co.*, 247 F. R. D. 691, 695-96 (S.D. Fla. 2007).  Accordingly, Plaintiffs respectfully request that a protective order be entered in this case limiting Pate's discovery requests to the topics identified below related to the Court's choice of law determination and that all such other discovery be stayed pending resolution of the Court's choice of law determination.  In the event the Court refuses to grant a stay of non-choice-of-law discovery, Plaintiffs move the Court for a protective order precluding discovery of information and documentation irrelevant or not sufficiently limited to the substantive coverage issues in this case.

#### A.  Discovery Should Be Limited To Seek Facts Relevant To Choice Of Law

The scope of discovery relevant to choice of law is well-defined under Florida law, as there exists a finite and discrete set of facts that have been relied upon by Florida courts applying *lex loci contractus* to an insurance policy.  As explained below, Florida law contains a clear and

4

established line of precedent holding that the last act necessary to complete the contract takes place where the insured or its agent receives the policy or binder.  Despite the overwhelming weight of authority on this point, a few outlying cases have suggested that additional facts might also be considered under *lex loci contractus*, such as: (1) the insurer's transmission of binders or policies; (2) signature of the policy or binder; (3) the locus of "strong interaction" between the insurer, insured, and other agents in obtaining the Policies; (4) countersignature; (5) premium payment; (6) certifications of insurance; and (7) modification of contract terms.  The entirety of the facts considered by these cases under *lex loci contractus* is as follows:

### 1. Where the Insured Received and Accepted The Policy or Binder Is Determinative of *Lex Loci Contractus*

The majority of Florida courts considering the issue have stated that the *only* fact determinative of *lex loci contractus* is the location where the insured or its agent received and accepted the policy or binder.  The United States Court of Appeals for the Eleventh Circuit adopted this view most recently in *Prime Insurance Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, in which an insurance binder was sent from an insurer headquartered in Illinois to an insured located in Alabama.  363 F.3d 1089, 1093 (11th Cir. 2004).  The Eleventh Circuit in *Prime Insurance* deemed the last act necessary to complete the contract to have occurred in Alabama, the location in which the insured received communication of the binder from the insurer.  *Id.* (*citing Pastor v. Union Cent. Life Ins. Co.,* 184 F. Supp. 2d 1301, 1305 (S.D. Fla. 2002) (noting that a contract dispute is governed by the laws of the state in which the contract was delivered)).  Notably, *Prime Insurance* expressly declined to apply the law of the location from which the insurer issued the communication of the binder, *id.*, which was asserted to be in either Illinois or Utah.  Brief for Appellant at 33, *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089 (11th Cir. 2004).

Prior to *Prime Insurance*, the Eleventh Circuit reached the same conclusion in *Industrial Chemical & Fiberglass Corp. v. North River Insurance Co*., which also recognized that the last act necessary to the execution of a policy of insurance under *lex loci contractus* was where the receipt of the insurance contract occurred.  908 F.2d 825, 829 n.3 (11th Cir. 1990).  Specifically, *North River* applied the law of New York because "[t]he last act necessary to the execution of the North River policies, *the receipt and acceptance of the policies by the named insured*, took place in New York."  *Id*.  (emphasis added)

The Eleventh Circuit's opinions in *Prime Insurance* and *North River* are in accord with the only Florida state court opinion to have addressed the issue.[3]  Specifically, in *Bloch v. Berkshire Insurance Co*., an insurer located in Florida issued a policy of insurance to an insured located in New York.  585 So. 2d 1137 (Fla. Dist. Ct. App. 1991).  In *Bloch*, the Florida District Court of Appeals held that the policy was governed by the law of New York because New York was the jurisdiction to which the policy was sent.  *Id*.  The court specifically stated: "[a]s to the choice of law issue, we agree with the trial court that this insurance contract, which was delivered to Bloch in New York where he then resided, was regulated by New York, rather than Florida, law."  *Id*.

*Prime Insurance*, *North River*, and *Bloch* have been followed closely by the majority of United States District Courts applying Florida choice of law rules.  For instance, in *CAE USA, Inc. v. XL Ins. Co. Ltd.,* the District Court held that *lex loci contractus* resulted in the application of Canadian law because the insurance policy was delivered to the insured in Canada.  No. 08:11-cv-64-T-24, 2011 WL 1878160, at *2 (M.D. Fla. May 17, 2011).  Similarly, the District

---

[3] Although numerous Florida state courts have applied *lex loci contractus* to insurance contract disputes, *see, e.g., Sturiano v. Brooks*, 523 So. 3d 1126, 1128-29 (1988); *State Farm Mut. Auto. Ins. Co. v. Roach,* 945 So. 3d 1160, 1162 (2006); *Strochak v. Federal Ins. Co.,* 707 So. 2d 727, 729 (1998); *Lumbermens Mut. Cas. Co. v. August*, 530 So. 2d 293, 296 (1988), *Bloch* is the only opinion that specifies the facts necessary to determine where a contract was executed for purposes of applying the rule.

Court in *American Home Assurance Co. v. Peninsula II Developers, Inc.* concluded that California law governed a policy under *lex loci contractus* because the last act necessary to complete the contract was the broker's receipt of the binder in California.  No. 1:09-cv-23691-PAS, at *6 (S.D. Fla. Oct. 19, 2010) (noting that "insurance treatises have suggested that an insurance contract is executed upon delivery of a binder.").  Likewise, *Pastor v. Union Central Life Insurance Co.* applied *lex loci contractus* and found that New Jersey law applied to an insurance contract because it was delivered to the insured in New Jersey.  184 F. Supp. 2d 1301, 1304-05 (S.D. Fla. 2002).  At least two other federal courts reached similar conclusions under *lex loci contractus*.  *In re Celotex Corp.*, 194 B.R. 668, 673 (Bankr. M.D. Fla. 1996); *CNL Hotels & Resorts, Inc. v. Houston Casualty Co.*, 505 F. Supp. 2d 1317, 1321 (M.D. Fla. 2007).[4]

## 2.  Additional Facts That Have Been Considered In Applying *Lex Loci Contractus*

*CNL Hotels* and *Celotex* are indicative of a small minority of opinions that have articulated slightly different *lex loci contractus* analyses, and have mentioned or considered facts other than the location where the insured or its agent received the policy or binder.  Although the weight of Florida precedent indicates that these additional facts should not be determinative of *lex loci contractus* in this case, in light of this Court's September 13 ruling, Plaintiffs are responding to discovery on the following topics:

---

[4] Specifically, *In re Celotex Corp.* recited a list of additional factors that could potentially be relevant under *lex loci contractus*, but the opinion ultimately adhered to the majority position by concluding that "delivery of the binders" to the insured's broker was "sufficient to bind all the parties and, thus, to be the final act required to secure coverage under the contracts."  194 B.R. at 673.  *CNL Hotels & Resorts, Inc. v. Houston Casualty Co.* reached a similar conclusion when it held that the last act under *lex loci contractus* occurred in the place where the insured's broker was located.  505 F. Supp. 2d at 1321.

### a. The Place From Where the Insurer Transmits Binders or Policies to the Insured

The place from where an insurer transmits a policy or binder has never been held to be determinative of *lex loci contractus*. However, the *Peninsula II* opinion*, supra*, suggests in *dicta* that the last act to complete the insurance contract might possibly have taken place in the jurisdiction from where the insurer issued the insurance binder. No. 1:09-cv-23691-PAS at *18. Ultimately, however, the *Peninsula II* court did not rely on this fact because none of the parties asserted it was relevant. *Id.* Indeed, this fact has never been mentioned in any opinion other than *Peninsula II*. Nonetheless, and based on this *dicta* from *Peninsula II*, Plaintiffs recognize that discovery on the following topics may be appropriate:.

### b. The Place Where the Insurer and Insured Signed the Policies

The place in which the *insurer* signed the insurance contract was mentioned in *CNL Hotels*, *supra*, which briefly noted that the binder was signed by the insurer in New York. 505 F. Supp. 2d at 1321. The Court in *CNL Hotels* did not premise its holding on this fact; rather, it applied New York law solely because the binder had been transmitted to the insured from the insured's New York broker. *Id.* Similarly, the place where the *insured* signed the insurance contract was relied upon in *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d at 1235. However, the insurer in *Fioretti* expressly conditioned approval of the insured's application on his signature on a "Statement of Good Health," and both parties agreed the execution of the Statement was the last act necessary to complete the contract. *Id.* Notably, however, *CNL Hotels* never relied on the location of the signature in reaching its conclusion, and the unique circumstances present in *Fioretti* are not before the Court in the instant case.

### c. Location Where "Strong Interaction" Between the Insurer, Insured, Brokers, and Agents Took Place

In making its determination under *lex loci contractus*, the opinion in *Celotex*, *supra*, mentioned the location of the insurance market where a so-called "strong interaction" took place in furtherance of obtaining the policies at issue.  194 B.R. at 672-73.  However, the court in *Celotex* did not base its choice of law decision on this factor; rather, it unequivocally stated that "the law is clear that delivery of the binders of insurance to the particular agents in Illinois is sufficient to bind all the parties and, thus, to be the final act required to secure coverage under the contracts."  *Id.*

*        *        *

In sum, the only facts relevant to the *lex loci contractus* analysis are the locations where the named insureds, Beta and Finest, received the policies or binders.  Nonetheless, in light of Florida case law in which courts have considered (though not relied upon) other factors, Plaintiffs recognize this Court's ruling that developing choice of law evidence may include information and documentation with respect to the place from where the insurers transmitted the binders or policies to the insureds, the place where the insurers and insureds signed the policies, the location where a "strong interaction" between the respective insurer, insured, brokers and agents took place, as well as the location where countersignature, payment of premiums, certificates of insurance, and modification of contract terms took place.  All other discovery purportedly directed to choice of law or any other matter is irrelevant to the *lex loci contractus* analysis.  Accordingly, the discovery requests seeking the following irrelevant information and documentation should be precluded: the location where the policies and binders were "drafted," "created," or "determined to be complete" (Interrogatories 1, 3, 8, and RFPs 9, 32, 35); the identity of the person "who determined the insurance policies were complete and ready to be sent

9

to the policy holder and/or the policyholder's broker" (Interrogatory 3 and RFP 32), documents concerning the location of the insured risk (RFP 35), and documents concerning the applications of insurance and drafting and preparation of the policies (RFP 22-23).[5]   Plaintiffs respectfully request that the Court enter a protective order precluding all such discovery as it is irrelevant to the Court's choice of law determination under the *lex loci contractus* analysis, even under the broadest interpretation of Florida case law.

**B.   Even If The Court Finds That Discovery With Respect To Substantive Coverage Issues Is Appropriate, Pate's Discovery Seeks Information And Documentation That Is Irrelevant To The Substantive Coverage Issues In Any Event**

Plaintiffs seek a stay of all discovery unrelated to the *lex loci contractus* choice of law analysis set forth above.  Specifically, Plaintiffs request that the Court enter an order staying all other discovery purportedly relating to substantive coverage issues until after the Court has ruled with respect to choice of law.  Discovery with respect to the substantive coverage issues would be premature as facts relevant to interpretation and application of the policy provisions at issue may differ depending on which state's law is applied by the Court.

Nonetheless, even if the Court finds that the substantive coverage issues are discoverable prior to ruling on choice of law, which it respectfully should not, Plaintiffs move this Court for entry of a protective order with respect to Pate's discovery purportedly directed to substantive coverage issues because it is irrelevant, overbroad and not calculated to lead to relevant evidence relating to any substantive issue in this case.  *See Milinazzo v. State Farm Insurance Company*, 247 F.R.D. 691, 695-96 (S.D. Fla. 2007) (Discovery which has no possible bearing on the claims

---

[5]  All other discovery requests do not appear to be directed to choice of law but are, in any event, irrelevant to choice of law and should be precluded even if not specifically identified in this section.

and defenses of the parties or otherwise on the subject matter of the action should not be allowed.).

The meaning of the policy provisions at issue in this case should be determined as a matter of law, and without resorting to the kind of extrinsic evidence that Pate seeks in its discovery. *See, e.g., Medmarc Cas. Ins. Co. v. Ventura*, No. 07-23300, 2008 WL 5101800, at *4 (S.D. Fla. Dec. 1, 2008). Nonetheless, in his Second Set of Interrogatories ("Second Interrogatories") and First Request for Production of Documents ("RFP"), Pate seeks extensive discovery directed toward obtaining information extrinsic to the policies. This discovery falls into four categories, including: (1) the drafting of the Policies and binders (Interrogatories 1, 3, 8; Second Interrogatories 1-3; RFPs 9, 22, 23, 32, 35); (2) the underwriting of the Policies (Interrogatory 2; Second Interrogatory 2-3; RFPs 3, 14, 20); (3) Plaintiffs' submissions before regulatory or governmental agencies (RFPs 21, 38, 39, 40); and (4) Plaintiffs' claim handling practices (Interrogatory 6; RFPs 4, 25, 26, 37, 41). As explained herein, these requests seek irrelevant information, are overbroad, are insufficiently limited in time and scope, and otherwise fail to seek information reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Plaintiffs' Motion for Protective Order should be granted.

All four categories of discovery requests seek information extrinsic to the policies at issue. Before Pate could be entitled to discovery on these extraneous topics, he would need to make a prima facie showing that the policy provisions at issue, the Total Pollution Exclusion and "various" other pollution exclusions, are ambiguous, and then explain how the information he seeks could be used to resolve this alleged ambiguity. *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 702-03 (S.D. Fla. 2007).[6] Pate has not made a showing – nor can he make any

---

[6] *See also, e.g., Galecor, Inc. v. Institute of London Underwriters*, 729 F. Supp. 1101, 1106 (E.D. Pa. 1990) (finding that since the insurance contract was not ambiguous, "it would be improper to look to

showing – that the Total Pollution Exclusion in Plaintiffs' Policies is ambiguous, as courts have consistently upheld its language as being clear and free from ambiguity.  *See, e.g., Deni Associates of Florida, Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1137-38 (Fla. 1998) (finding pollution exclusion with language identical to Plaintiffs' Total Pollution Exclusion unambiguous).[7]  *See also Medmarc Cas. Ins. Co. v. Ventura*, 2008 WL 5101800, at *4 (S.D. Fla. Dec. 1, 2008) (denying insured's request for production because the insurer's "internal documents concerning its interpretation of the limitation of liability provisions in its insurance contracts are irrelevant to this declaratory action in which the Court must construe the meaning of those provisions as a matter of law, without resorting to the kind of extrinsic evidence that the [insureds] seek in this request for production").  Consequently, any extraneous information and documentation sought in Pate's discovery should be deemed *per se* irrelevant, overbroad, and not reasonably calculated to lead to the discovery of admissible evidence.

Furthermore, Plaintiffs seek an order precluding discovery with respect to underwriting materials and regulatory filings to the extent Pate seeks information related to any other pollution exclusion other than the Total Pollution Exclusion at issue in this case or policies issued by companies or underwriting divisions other than those that issued the policies in this case.  For

---

extrinsic evidence for the intent of the parties"); *Jeffrey M. Brown Associates, Inc. v. Interstate Fire & Cas. Co.*, 997 A.2d 1072, 1074 (N.J. Sup. Ct. App. Div. 2010) (holding that "[i]f the [policy] language is clear, that is the end of the inquiry," and that a court may look to extrinsic evidence as a guide to interpretation only where the language of an insurance policy is ambiguous); *State Farm Mut. Auto. Ins. Co. v. Bentley*, 262 A.D.2d 739, 740 (N.Y. App. Div. 1999) (noting that it is "well settled that resolution of the rights and liabilities of parties to an insurance contract is a question of law for a court to determine based upon the specific provisions of the policy at issue, unless the terms of the policy are ambiguous and require consideration of extrinsic evidence as an aid to construction," and that there is "no need to resort to extrinsic evidence [if] there exists no ambiguity in the relevant provisions.").

[7] *See also, e.g., Jackson v. Atlantic*, 2005 WL 2757134, *4 (N.J. Super. 2005) ("Our courts have 'consistently' held that the pollution exclusion clause is clear and unambiguous."); *Fayette County Housing Authority v. Housing and Redevelopment Ins. Exchange*, 771 A.2d 11, 13 (Pa. Super. 2001) (finding a pollution exclusion clause unambiguous); *B.U.D. Sheetmetal Inc. v. Mass. Bay Ins. Co.*, 248 A.D.2d 856, 857 (N.Y. App. Dept. 1998) ("clear and unambiguous pollution exclusions should be given full effect").

example, Second Interrogatory number 2 seeks "all documents, including manuals, that concern under what circumstances You will include the Total Pollution Exclusion Endorsement in **an** insurance policy," Second Interrogatory number 3 seeks information regarding the classification of policyholders and the basis for including "*various* pollution exclusions" in insurance policies, and RFP 38 seeks "all filings by Plaintiffs with governmental authorities in Florida, New York, and Pennsylvania," from 2000 to the present, regarding, **without limitation**, "the pollution exclusion."   (Emphasis added.)   Such information has no relevance to whether the Total Pollution Exclusion in the policies at issue bars coverage for the Drywall Claims.   *See Rosenbaum v. Becker & Poliakoff, P.A.*, 2010 WL 623699, at *14 (S.D. Fla. Feb. 23, 2010) (refusing to compel certain discovery requests "[g]iven the tremendous burden of producing the requested information, coupled with its tenuous connection to the issues in this case," and the requesting party's "fail[ure] to satisfactorily explain the relevance of the information sought to the litigation at issue") (attached as Exhibit D).   *See also State National Ins. Co. v. Lamberti*, 2009 WL 702239, at *3 (S.D. Fla. Mar. 17, 2009) (finding request for "documents 'related to prior litigation regarding insurance and/or insurance coverage'" impermissibly overbroad). Accordingly, such overbroad and irrelevant discovery should be barred.

Plaintiffs also seek a protective order precluding discovery to the extent it seeks information relating to claims handling practices, including claims files, claims manuals or any other claims-related information or documentation as in Interrogatory 6 and RFPs 25-26 (seeking the location where claims are handled or assessed and from which claims were received), RFP 37 (seeking identity of the claims managers and their locations), RFP 4 (seeking "Claims Files for the Insurance Policies") and RFP 41 (seeking "your claim manuals").   In addition to the fact that these requests are impermissibly overbroad and unlimited in time or

scope, such requests seek claim information, which is wholly irrelevant to the interpretation of the policies at issue. *Am. Home Assur. Co. v. Vreeland*, 983 So. 2d 668, 671 (Fla. 2d DCA 2008); *GEICO Gen. Ins. Co. v. Hoy*, 927 So. 2d 122, 126 (Fla. 2d DCA 2006) (holding that a trial court departs from the essential requirements of the law in compelling disclosure of the contents of an insurer's claim file when the issue of coverage is in dispute and has not been resolved). Accordingly, Plaintiffs are entitled to a protective order precluding such discovery.

In sum, for all the reasons stated herein, even if the Court refuses to grant a protective order or to stay discovery unrelated to choice of law until the Court rules on the applicable law, Plaintiffs respectfully request a protective order barring Pate's discovery requests to the extent they seek information and documentation extraneous to the policies, including with respect to the drafting of the Policies and binders, the underwriting of the Policies, Plaintiffs' submissions before regulatory or governmental agencies, and Plaintiffs' claim handling practices. Such materials have no bearing on the substantive coverage issues presented by this case and should be protected from discovery.

## IV.    CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court grant its Motion for Protective Order or Stay of Discovery as set forth above.

Dated: October 17, 2011                Respectfully submitted,

 /s/ Sara U. Gattie_____
Joseph Hinkhouse
Frank Valenti
Sara Gattie
HINKHOUSE WILLIAMS WALSH
180 North Stetson Street, Suite 3400
Chicago, Illinois  60601
Phone:  (312) 784-5454
Fax:  (312) 784-5494
E-mail:   jhinkhouse@hww-law.com
          fvalenti@hww-law.com
          sgattie@hww-law.com

Cindy L. Ebenfeld, Esq.
Fla. Bar No. 980579
Hicks, Porter, Ebenfeld & Stein, P.A.
11011 Sheridan Street, Suite 104
Cooper City, FL  33026
Tel:      954-624-8700
Fax:     954-624-8064
Email: cebenfeld@mhickslaw.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

In accordance with Middle District Local Rule 3.01(g) and Federal Rule of Civil

Procedure 26(c), we hereby certify that we have conferred in good faith with counsel for Pate in

an attempt to resolve the issues raised in this motion, but have been unable to do so.

Dated: October 17, 2011                Respectfully submitted,

   /s/ Sara U. Gattie_____
Joseph Hinkhouse
Frank Valenti
Sara Gattie
HINKHOUSE WILLIAMS WALSH
180 North Stetson Street, Suite 3400
Chicago, Illinois  60601
Phone:  (312) 784-5454
Fax:  (312) 784-5494
E-mail:   jhinkhouse@hww-law.com
         fvalenti@hww-law.com
         sgattie@hww-law.com

Cindy L. Ebenfeld, Esq.
Fla. Bar No. 980579
Hicks, Porter, Ebenfeld & Stein, P.A.
11011 Sheridan Street, Suite 104
Cooper City, FL  33026
Tel:     954-624-8700
Fax:     954-624-8064
Email: cebenfeld@mhickslaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 17, 2011, a true and correct copy of the foregoing was electronically filed with the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document is being served on the following counsel of record, via transmission of Notices of Electronic Filing generated by CM/ECF, this 17th day of October, 2011:

| | |
|---|---|
| Robert M. Horkovich, Esq.<br>Anna M. Piazza, Esq.<br>Anderson Kill & Olick, P.C.<br>1251 Avenue of the Americas<br>New York, NY 10020<br>Tel:    212-278-1000<br>Fax:    212-278-1733<br>rhorkovich@andersonkill.com<br>apiazza@andersonkill.com<br>*Attorneys for Defendant Robert C. Pate,*<br>*As Trustee for the WCI Chinese Drywall Trust* | Alexis Gonzalez, Esq.<br>Albert E. Acuna, Esq.<br>Law Offices of Alexis Gonzalez, P.A.<br>9755 SW 40th Terrace<br>Miami, FL 33165<br>Tel:    305-223-9999<br>Fax:    305-223-1880<br>alexis@aglawpa.com<br>albert@aglawpa.com<br>*Attorneys for Defendant Finest Drywall, Inc.* |
| Michael J. Ryan, Esq.<br>Krupnick Campbell Malone Buser Slama<br>Hancock Liberman and McKee, P.A.<br>12 SE 7th Street, Suite 801<br>Ft. Lauderdale, FL 33301<br>Tel: 954-763-8181<br>Fax: 954-763-8292<br>mryan@krupnicklaw.com<br>*Local Counsel for Defendant Robert C. Pate,*<br>*As Trustee for the WCI Chinese Drywall Trust* | Via Certified Mail Return Receipt Requested:<br>Beta Construction LLC<br>c/o Stephen Feldman<br>5 Soundview Lane<br>Great Neck, NY 11024<br>And<br>Beta Construction LLC<br>c/o UPS Store Box<br>6586 Hypoluxo Road<br>Lake Worth, FL |
| Cindy L. Ebenfeld, Esq.<br>Fla. Bar No. 980579<br>Hicks, Porter, Ebenfeld & Stein, P.A.<br>11011 Sheridan Street, Suite 104<br>Cooper City, FL  33026<br>Tel:    954-624-8700<br>Fax:    954-624-8064<br>cebenfeld@mhickslaw.com<br>*Co-Counsel for Plaintiffs* | |

17